GLENDA LEMONDS, A MINOR, BY HER NEXT FRIEND, C. J. LEMONDS, APPELLANT-RESPONDENT v. CARLMAC HOLMES AND B. W. YOUNG, RESPONDENTS, DEWEY RAMSEY AND VIRGIL GREENWAY, APPELLANTS. —236 SW (2) 56.

Springfield Court of Appeals.  February 2, 1951.

*Ward & Reeves* for Appellants Dewey Ramsey and Virgil Greenway.

*McHaney & McHaney, Hal H. McHaney, Flake L. McHaney* for
Appellant-Respondent.

466

*Elbert L. Ford, Jones and Jones* for Respondents Carlmac Holmes and B. W. Young.

VANDEVENTER, P. J.—This case arose from an automobile collision on State Highway 25 about 2½ miles south of Senath, Missouri. It was tried to a jury, which returned a verdict against plaintiff and for defendants Holmes and Young and for plaintiff and against defendants, Ramsey and Greenway in the sum of $5,000.00. From a judgment as to Holmes and Young, plaintiff appeals, and defendants Ramsey and Greenway appeal.

Greenway was night marshal of Senath and Ramsey was day marshal, or Chief of Police, under whom Greenway worked. On the night of November 22, 1947, at about 10 o'clock, they received word that two men were driving a truck upon the streets of Senath, that they were drunk and that the truck was without lights. The officers borrowed a DeSoto automobile from a friend of Greenway's, started out to investigate and, if necessary, apprehend these violators: They finally located them within the city limits and followed them as they were going south on State Highway 25, their truck weaving from side to side of the highway. The officers followed for more than two miles and until the truck was driven out on the highway shoulder. At the direction of Ramsey, Greenway, who was driving the DeSoto, went on south of the truck, approximately one-fourth mile, turned around and came back north, parking the DeSoto partially on the west and left hand side of the highway, with the lights on. They got out and found the truck stopped on the highway and the driver of the truck "slumped" over the wheel in a drunken condition. They took the driver and his companion, who was also drunk, out of the truck and put them in the back seat of the DeSoto. Greenway then got in the truck under instructions from Ramsey, and backed it off the highway and into the west ditch. The left side of the truck was about four feet west of the paved portion of the highway, and it was facing south.

In the meanwhile, plaintiff, her girl friend, Frances Bess, and defendants, Holmes and Young were riding around in a Ford Coach. They had been to Kennett and driven back down to Senath with the intention of going to the midnight show. Defendant Holmes and one Paul Buck had driven the car to Kennett where they had picked up the two girls and Buck had driven back to Senath, at which place Young asked Holmes if he should drive and was told to go ahead. There Paul Buck left the party. Young then drove the car with Frances Bess sitting to his right in the front seat. Holmes was on the left side of the rear seat and plaintiff was sitting to his right. They

drove out of Senath on Highway 25 until they had passed what was known as the one mile curve and then started south on a straight stretch of road, which had no curves for approximately 2½ miles. They passed a truck on the one mile curve and then started down the straight highway toward Cardwell. Young, driving the car, saw the lights of the parked DeSoto. when it was about one-fourth mile south of him. He flashed his lights two or three times from dim to bright and back to dim, signaling the car, the lights of which he saw ahead, endeavoring to cause the supposed driver thereof to dim his lights. When he made the first signal, he took his foot off the accelerator but there was no response from the car ahead. It appeared to him that the car was advancing in the middle of the highway and he assumed that the driver would turn to the proper side of the highway before they met. He watched the road all the time and he reduced his speed when he was about 300 yards from the DeSoto. He had applied his brakes and slowed down from about 30 miles an hour to 35 or 40, when he discovered the DeSoto was not going to turn. He applied his brakes again and turned to the left in an attempt to avoid a collision and the right half of the front of the Ford struck the right half of the front of the DeSoto, resulting in the injuries complained of. At the time of the collision, his estimated speed was twenty miles per hour. He was rendered unconscious by the impact.

Young testified that the lights of the DeSoto were on bright. Defendants Ramsey and Greenway testified they were on dim. Greenway testified that the collision occurred immediately after he had backed the truck into the ditch and while he was alighting from the cab with his right foot on the fender and his left foot on the ground. He estimated the speed of the Ford at 60 miles per hour and was of the opinion that it did not slow up before the collision.

The plaintiff suffered grievous injuries and there is no contention that they were insufficient to support the verdict of $5,000.00, but it is contended by appellants Ramsey and Greenway that the court committed error in not sustaining their motion for a directed verdict as to them at the close of plaintiff's evidence and at the close of all the evidence, for the reason that the evidence showed no causal connection between the acts of defendants and plaintiff's injuries.

Plaintiff, in her appeal, contends that Young and Holmes were guilty of negligence as a matter of law and for that reason, the verdict for them should be set aside. Other questions raised in the briefs will be discussed after we have decided these two main contentions.

In considering whether there was sufficient evidence of negligence to submit the question to the jury, this court must consider the whole evidence and give the prevailing party the benefit of all facts and circumstances favorable to or tending to support his or her theory of the case with every reasonable inference that may be drawn therefrom, while the evidence of the losing party or parties contradicting

the prevailing party's evidence, or any evidence favorable to the loser, must be excluded from consideration. Silvey v. Herndon, 234 S. W. (2) 355.

Bearing this rule in mind, plaintiff's evidence showed that the two officers followed two drunken persons, driving on the highway without lights, for more than 2 miles. The car they were following was weaving from one side of the highway to the other and finally "pulled off the black top on the shoulder." The officers drove on past for approximately ¼ mile, turned around and came back to where the truck was stopped on the highway, the drunken driver slumped over the wheel. Now instead of parking on the right and east side of the road and dimming their lights, (which would have been as easy or easier) they left their lights on bright, crossed the left half of the highway and parked on the left and west side of the center of the pavement. Both officers testified that the car was parked about one foot on the west edge of the pavement but the evidence also showed that the right front half of the Ford struck the right front half of the DeSoto. Young, the driver of the Ford, testified that he was always on the paved portion of the road and Greenway said that immediately before the time of the collision, the Ford might have been within one foot of the west edge of the pavement. From this evidence, the jury would have been justified in believing that the DeSoto was parked more than one foot on the slab, otherwise, the right half of the two cars could not have collided. This conclusion was strengthened by the testimony of defendant Young and Frances Bess that the lights of the DeSoto appeared to be in the center of the highway and advancing. It is true that one of the defendants testified that the shoulder on the west of the highway was soft and slick but he does not say that it was impossible to have parked the car off the highway on the west side. He testified:

"Q. Could you have parked your car any farther on the shoulder? A. May have but I was afraid I may get stuck and we wanted to get the drunks and get back to town."

The evidence shows no reason why he did not park on either the east side or east shoulder of the highway. It had been raining and the pavement was wet, in fact, one of the officers testified that it was sprinkling at the time, and the wet pavement would naturally, to some extent, affect the reflection of the headlights. Greenway testified that he though the speed of the Ford was 55 or 60 miles an hour at the time of the collision, and also that he had seen the headlights up the highway at the time he drove up in the DeSoto. They loaded the prisoners in the DeSoto and Greenway backed the truck in the ditch and was alighting from the cab when the collision occurred. He estimated it took three minutes to park the truck. Ramsey estimated the whole time from their arrival until the collision was four minutes. If this is true, the Ford could not have been traveling at the speed

estimated by the officer, even if it were 1½ miles away when he first saw it.

At the time of the collision, Greenway was stepping from the truck, his right foot was on the fender and his left foot on the ground, which would have placed his back to the oncoming Ford. While he was in the truck he had been watching Ramsey south of him, directing his activities with a flashlight. From his admitted position, the jury would have been justified in assuming that his observation as to the speed of the Ford and its location on the highway was not accurate, to say nothing of his failure to see Young blink his lights from bright to dim. He said the Ford passed close to his legs but also that it might have been one foot from the west edge of the pavement. Taking all these facts into consideration, the jury must have thought, and certainly could have had reasonable grounds for so thinking, that the DeSoto was parked considerably more than one foot from the west edge of the pavement and in the path of south bound traffic. Parked as it was and with the lights "on bright", it seems to us that it was a dangerous and hazardous obstacle to south bound traffic and that parking it in such position, under the circumstances, was negligence. This certainly contributed to plaintiff's injury. Had it not been so parked, the collision would not have happened.

We have read the authorities cited by the appellant officers upon the contention that they were not required to exercise the highest degree of care because they were officers and were on an emergency mission. These cases are entirely different in facts from the case before us. It is stated in the cases cited relative to policemen and firemen, that ordinary traffic regulations do not apply to them because of the urgency of their missions and the imperative emergency that confronts them. The reason for this rule as to firemen is well stated in Michael v. K. C. Western Railway Co. 143 S. W. 6, 161 Mo. App. 53, where it was said:

"Fire is the best of servants and the most tyrannical of masters. When, escaping control, it breaks out in thickly populated places, its enormous capacity for evil and the rapidity of its expansion makes the performance of the task of regaining control over it one of general public concern and creates an imperative emergency that will brook no delay, however slight."

But the reasoning in these cases does not apply to the case before us. There is a vast difference in the urgency and imperative necessity of firemen rushing to the scene of a conflagration or policemen hurrying to prevent robbery, rapine or murder and the action of a city marshal in pulling a somnolent drunk from the cab of a parked truck, with lifeless engine, so he can be taken to the local bastile, even if the truck is lightless and on a highway.

It seems that the two officers had followed the drunken driver for over two miles in a rather leisurely fashion. When they turned around

and came back to where the truck was standing on the highway, instead of stopping on the right and east side of the road and parking on the shoulder, they pulled across the part of the pavement used for southbound traffic, and parked at least partially on the pavement with their bright lights burning. This action on their part and the position of the parked car was not due to the urgency of their mission, neither was it due to an imperative emergency, and they did not come within the exception urged. The jury found that it was negligence and we think it was correct. If they were going to park, they should have done so as near the east side of the highway as practical. (Sec. 8385 Mo. R. S. A.) Furthermore, there is no exception in the statute. (Sec. 8383, Mo. R. S. A.) It requires "every person" to exercise the highest degree of care when operating a motor vehicle on the highways of this state. Even if the courts could read into this statute an exception applying to policemen and firemen when officially acting under urgent necessity, the facts here do not bring Ramsey and Greenway within it. Neither should they have left their headlights on "bright". (Sec. 8386 P, Mo. R. S. A.) Under the circumstances, it was their duty to use the highest degree of care and the court was correct in so instructing the jury.

Neither do we think that Young and Holmes were guilty of negligence as a matter of law. When Young passed a truck and started down the straight stretch of highway, he saw the parked DeSoto approximately 300 yards ahead. It appeared to be in the center of the road and advancing toward him. He knew that many drivers would drive in the center of the road but pull to their right when meeting traffic. He assumed that was the situation here. However, he took his foot off the accelerator and blinked his lights as a signal for the car ahead to switch his lights to dim. When it appeared that the car was not going to turn to its right, he applied his brakes and later turned to the left, endeavoring to avoid a collision. At the time of the collision, his speed, he says, was 20 miles per hour. A motorist is not required to slow down or stop, merely because headlights are advancing in his direction. It is only when he has knowledge, or by the exercise of the highest degree of care could have such knowledge, that the advancing car is not intending to move to the right, that he must take all reasonable precautions to avoid a collision. We think whether he was negligent under all the facts in this case was a jury question for the jury, and they decided in his favor and against the plaintiff.

Wilson v. Holloway et al., (Ark.) 208 S. W. (2) 178, is cited as authority. In that case, the defendant had parked his truck on a side road near and on the left side of the highway, but entirely off the paved portion of the road. The lights were on but the testimony was conflicting as to whether they were bright or dim. In the car that collided with it were four persons and the evidence shows they had been drinking and were probably intoxicated at the time. Holloway,

who was driving, drove off the highway onto the shoulder and hit defendant's truck, head-on. The only negligence submitted to the jury was that defendant failed to dim his lights after being signalled to do so. The Supreme Court held that the defendant was not guilty of negligence but that the plaintiffs were guilty of negligence as a matter of law. It differs from the case before us in so many essential particulars that it is not persuasive here. In that case, if plaintiff had merely stayed on the highway where he was supposed to be, the accident would not have happened. The court said: "Holloway must have known that the truck was parked on the shoulder of the highway, yet he made no effort to turn the car back on the concrete." In the case at bar, the parked car had all the appearance of being in the center of the highway and advancing, and defendant Young so thought.

Appellants Ramsey and Greenway, in their brief state:

"Plaintiff's Instruction XI-P given by the court was erroneous in that it instructed the jury that appellants (defendants) Ramsey and Greenway were required to use the highest degree of care   *   *   ."

It is true that the court, in Instruction VII-P told the jury that persons operating motor vehicles on the highway are charged with exercising the highest degree of care, and from what has already been said, that instruction applied to defendants, Ramsey and Greenway.

Instruction XI-P complained of does not exactly tell the jury that such burden was on Ramsey and Greenway but it says:

"   *   *   if you find and believe that defendants Dewey Ramsey and Virgil Greenway, in the exercise of the highest degree of care, were negligent   *   *   "

in negligently and carelessly parking the car as the evidence showed they did, and that such acts caused or contributed to the injury, their verdict should be for the plaintiff. We are unable to see how a person, while exercising the highest degree of care, could at the same time be negligent. But no objection is made to the instruction on that ground. We would not recommend this instruction as a model but taken into consideration with all the other instructions given in the case, we believe if it was error, it was harmless.

Objection is also made to this instruction on the ground that it failed to set forth the circumstances under which the police officers were acting at the time of the accident. In other words, it is contended that the court should have told the jury that the police officers were acting in an emergency and were not chargeable with the highest degree of care. From what has already been said, it is apparent there is no substance in this objection.

It is also complained that the court erred in failing to give an offered instruction on the part of Ramsey and Greenway stating that Young was guilty of negligence. Under our view of the case, this was not

error because whether Young was guilty of negligence was a question for the jury.

This ruling also applies to plaintiff's requested and refused instruction (I-P) making a similar request.

In the motion for new trial filed by plaintiff, Glenda Lemonds, and in the motion for new trial filed by Dewey Ramsey and Virgil Greenway, each complained of the alleged misconduct of a juror by the name of Mrs. J. W. Reynolds. It is alleged that Mr. E. L. Ford, attorney for defendant Young, had previously been an attorney for Mrs. Reynolds; that she had been asked on the voir dire examination if Mr. Ford had ever represented her as counsel, and that she had not answered the question. The plaintiff in her brief has abandoned this portion of her motion for new trial but appellants, Ramsey and Greenway, insist that error was committed by the court in failing to sustain their motion on that ground.

The court took testimony on that question. The evidence showed that before the jury had gone into the box to be qualified that Mr. Ford, while sitting at the counsel table in the court room, had told Mr. Hal McHaney that he, Ford, had collected a note sometime previously for Mrs. Reynolds and also mentioned the fact that Mr. McHaney had acted as co-executor of the will of Mrs. Reynolds' first husband, J. W. Grantham, and had suggested that Mr. McHaney challenge her and that Mr. McHaney had answered that Mr. Ford could strike off the jurors he chose and that he, McHaney, would do likewise or words to that effect.

No action was taken by counsel to require Mrs. Reynolds to make a specific answer to the question whether she had ever been represented by Mr. Ford. After the plaintiff's challenges had been made, Mr. Ford, representing defendant Young, Mr. James M. Reeves and Mr. Geo. K. Reeves, representing Ramsey and Greenway and the law firm of Jones and Jones representing defendant Holmes, were in the jury room making challenges for the defendants. While in there, a discussion was had and Mr. Ford informed them all that he had at one time represented Mrs. Reynolds in the collection of a note and that Mr. Hal McHaney had also represented her in the settlement of her first husband's estate, and that he had called these facts to Mr. Hal McHaney's attention.

The law is well settled that diligence must be used in ascertaining the qualifications of jurors, that any matter within the knowledge of counsel or knowledge that might be acquired by the exercise of due diligence is considered as waived unless acted upon at the time. 50 C. J. S. Juries, Sec. 251, Page 1009. 66 C. J. S. New Trial, Sec. 23, Page 116. State v. Murray 292 S. W. 434, 316 Mo. 31. Cook v. Kansas City, 358 Mo. 296, 214 S. W. (2) 430.

It seems to us that the attorneys for appellants Ramsey and Greenway, were put upon notice when, in the jury room, while challenges

were being made, they were told by Mr. Ford who represented Young, that he had recently represented Mrs. Reynolds, that Mr. Hal McHaney had also represented her before her remarriage, and that he had called it to the attention of Mr. McHaney in the court room. As was said in 39 Am. Juris. New Trial, Sec. 44, p. 64:.

"It is well settled that a party who is aware of any circumstance affecting the qualifications or the competency of a juror is bound to make his objection by way of challenge before that juror is sworn, and if he fails to do so, he is deemed to have waived the objection and cannot, after an adverse verdict, assert it as ground for a new trial; he may not speculate upon a favorable result by withholding his objection until after the verdict is returned, and then when the verdict is unfavorable, move for a new trial."

By further questioning juror Reynolds and requiring specific answers, full information could have been obtained and the matter corrected, if necessary, before the trial panel was selected and the trial begun.

The trial court heard all the evidence on the motion for new trial and overruled it and we think its decision was correct. Finding no error in the record, the judgment of the trial court should be affirmed. It is so ordered. *Blair, J.,* and *McDowell, J.,* concur.