Margaret O. ROBINSON, Plaintiff-Respondent,

v.

Donald Bryson GERBER and Mittelberg-Gerber, a Corporation, Defendants-Appellants.

No. 33499.

St. Louis Court of Appeals, Missouri.

May 26, 1970.

Marvin G. Marshall, Burton H. Shostak, Henry Menghini, Evans & Dixon, St. Louis, for plaintiff-respondent.

Armstrong, Teasdale, Kramer & Vaughan, St. Louis, for respondent.

CLEMENS, Commissioner.

Factually this case is about a head-on collision between a Thunderbird automobile and a Buick ambulance. Legally the appeal presents a head-on conflict between two statutes, the right-half-of-the-road statute and the emergency-vehicle statute §§ 304.015 and 304.022.[1]

Plaintiff Margaret O. Robinson owned and was riding in the Thunderbird driven by her son, Raymond Owens. Defendant Donald Gerber drove the ambulance, owned by the corporate defendant. They collided head on at the crest of a hill in St. Louis County on U.S. Highway 66, Lindbergh Boulevard, while the ambulance was on its way to another collision nearby and was on the "wrong side of the road" in plaintiff's lane of travel.

Plaintiff got a $7,500 verdict and judgment and defendants appeal. They claim 1) plaintiff was contributorily negligent as a matter of law, 2) error in refusing defendants' right-of-way instruction that omitted the prescribed clause limiting right-of-way to "a very careful person", 3) error in giving plaintiff's verdict director submitting that defendants drove on the "wrong side of the road" since that ignored defendants' status as a statutory emergency vehicle and 4) error in the trial judge's comment on the right-of-way instruction. These in turn.

Defendants contend plaintiff's driver was contributorily negligent as a matter of law by failing to yield the right-of-way to defendants' "emergency vehicle", by failing to reduce speed, by failing to keep a careful lookout, and by failing to take corrective action after danger of collision became apparent.

Two principles of review guide us in determining plaintiff's contributory negligence as a matter of law. First, we must consider the evidence most favorable to plaintiff, must accord her the benefit of supporting inferences reasonably deducible from the evidence, and must disregard defendants' evidence except insofar as it aids the plaintiff, Burk v. Missouri Power & Light Company, Mo., 420 S.W.2d 274 [5]; and, we may not hold plaintiff contributorily negligent unless the favorable evidence is so strong against her there is no room for reasonable minds to differ. Justice v. East St. Louis City Lines, Inc., Mo., 375 S.W.2d 150 [5]; Baumle v. Smith, Mo., 420 S.W.2d 341 [3]. Second, we must judge the conduct of plaintiff and her driver in the light of circumstances reasonably apparent to them just before the collision, not upon circumstances which may have existed but were then unknown to them. Moore v. Middlewest Freightways, Inc., Mo., 266 S.W.2d 578 [3].

On the issue of contributory negligence, the jury could have found: The cars collided about 7:00 o'clock on a cold, foggy morning when Lindbergh Boulevard was heavily traveled. Lindbergh has four lanes, two southbound and two northbound. The plaintiff's Thunderbird was going south in the inner southbound lane and the defendants' ambulance was coming north in that same lane. They met at the sharp crest of a hill that limited each driver's forward visibility. During the previous half hour a series of three collisions involving seven cars had occurred at the crest, all in the northbound lanes, blocking northbound traffic.[2] At 7:00 o'clock three

---

1. All section numbers refer to R.S.Mo., 1959, V.A.M.S.

2. We doubt it is true, as some counsel contend, that there have been enough lawsuits over collisions on Lindbergh to pave the whole thing with transcripts.

police officers were "working" these collisions. Their cars were parked off the pavement near the crest, with lights flashing; they had set out flares, six on each side of the highway and six on each side of the crest. Behind the cars involved in the three previous collisions other halted northbound cars were lined up bumper-to-bumper for about 1700 feet down the hill south of the crest.

The police had radioed for an ambulance and defendant Gerber was responding to their "Code 3—Expedite" call. Gerber had been driving north on Lindbergh in his own right-hand northbound lanes. As he came up behind the halted cars that blocked both northbound lanes, in order to reach the scene of the previous collisions he swung to his left into the inner southbound lane and drove up the hill at a decelerating speed of 40 to 25 miles per hour. Thus the ambulance was moving north in the same lane in which plaintiff was moving south on the other side of the crest.

Both drivers saw that traffic had stopped in the northbound lanes at the crest of the hill, but neither noticed the police cars' flashing lights or the flares staked out along the highway shoulders. As said, neither driver could see the other's car as each came uphill toward the crest. Evidence of the distance of mutual visibility is not precise.[3] Plaintiff's driver first saw the ambulance when it was four car lengths away, squarely in front of him in his own lane. Defendant driver did not see the Thunderbird until it was a hundred feet away. As plaintiff's car approached the crest at 30 to 40 miles an hour neither she nor her driver heard defendants' siren, nor did the driver of another car also moving south in the lane to plaintiff's right. When plaintiff's driver did see the ambulance he "jammed on his brakes" but hit it almost immediately.

■ The plaintiff's duty to take evasive action arose only when it became actually or constructively apparent there was danger of collision with defendants' ambulance. Allan v. Read, Mo.App., 433 S.W. 2d 58 [2]; Lemonds v. Holmes, 241 Mo. App. 463, 236 S.W.2d 56 [4]; Stakelback v. Neff, Mo.App., 13 S.W.2d 575 [1]. True, there were previous visible signs of some danger on the highway; the stalled traffic, the flashing lights on the police cars and the flares should have alerted plaintiff's driver. But we cannot accept defendants' argument that these signs gave plaintiff and her driver notice that the ambulance was then approaching unseen in their own lane of traffic.

■ Thus, according to the favorable evidence the two vehicles were approaching each other at a closing speed of 60 miles an hour, about 90 feet a second. The ambulance was visible to plaintiff's driver for less than 100 feet in distance and barely over one second in time. His stopping distance was more than 100 feet and there were other cars to his left and right. We cannot say as a matter of law that plaintiff was contributorily negligent in failing to yield the right-of-way to defendants' ambulance by taking evasive action. Facts necessarily differ in cases involving meeting vehicles and driving on the wrong side of the road, but our conclusion here finds support in the cases of Burks v. Leap, Mo., 413 S.W.2d 258; Nydegger v. Mason, Mo., 315 S.W.2d 816; and Moore v. Middlewest Freightways, Inc., supra.

We have not overlooked defendants' further contentions that plaintiff was contributorily negligent as a matter of law by "failing to slow down and failing to see what was plainly visible." In this we must consider the element of proximate cause. In the landmark case of Howard v. Scarritt Estate Co., 267 Mo. 398, 184 S.W. 1144 [2] the court said: "The rule as to the quantum of contributory negligence which is sufficient to prevent recovery is that it

---

3. Both parties introduced photographs into evidence but none is lodged here so we are restricted to the oral testimony on this point.

must be such as to enter into and form the direct, producing, and efficient cause of the casualty, and absent which the casualty would not have happened."

■ The evidence here does not compel a conclusion that plaintiff's speed of 30 to 40 miles an hour was excessive, or that a slower speed would have avoided the collision. Nor does the evidence show that plaintiff's driver could have seen the ambulance sooner than he did or that the collision would not have occurred had he kept a more careful lookout. At best, speed and lookout were issues for the jury. Compare Hutson v. Highley, Mo.App., 384 S.W.2d 278 [1–8].

We conclude plaintiff was not guilty of contributory negligence as a matter of law, and move on to the challenged instructions.

■ Plaintiff pleaded that defendants had negligently driven their ambulance on the wrong side of the road; defendants answered affirmatively that plaintiff was contributorily negligent, particularly in failing to yield the right-of-way to their ambulance, an emergency vehicle. They now claim error in the refusal of their Instruction A, a modified MAI 14.01 defining an emergency vehicle's right-of-way in terms of § 304.022 and concluding: "Such emergency vehicle, while so operating, may disregard regulations governing direction of movement." The trial court refused Instruction A because it omitted the concluding bracketed clause of MAI 14.02 "provided a very careful person would so proceed under the same or similar circumstances." After the court refused Instruction A the defendants offered and the court gave defendants' Instruction No. 8. This was the same as Instruction A but added the very-careful-person clause. This addition accorded with the proposition that right-of-way is a qualified privilege. See cases cited at MAI 14.01 and Notes on Use, MAIs 14.02–14.07.

The defendants' only objection to the very-careful-person clause is that those words placed on them a duty to use the *highest* degree of care. This, say the defendants, "is contrary to the intent and purpose of V.A.M.S., § 304.022 which makes allowance for such operator of an emergency vehicle to disregard numerous regulations ordinarily associated with operations conforming to the highest degree of care." We disagree. Several earlier cases give support, albeit weakly, to defendants' contention. But the contention has been put to rest by the latest decision, Ficken v. Hopkins, Mo., 389 S.W.2d 193 [8, 9]. There the trial court had defined an emergency vehicle driver's negligence as the failure to use the highest degree of care. Affirming, the court said: "As previously noted, Section 304.010 requires that 'Every person operating a motor vehicle on the highways of this state * * * shall exercise the highest degree of care, * * *,' and neither it nor Section 304.-022, pertaining to emergency vehicles makes any exception. In other words, the driver of an emergency vehicle authorized by paragraph 4(2) of Section 304.022 to do the things therein provided without constituting a violation of what are known as the rules of the road, when doing them, must exercise the highest degree of care, which is such care as a very careful and prudent person would ordinarily use under the same or similar circumstances * *." The trial court properly refused defendants' Instruction A.

■ Defendants stress their attack on plaintiff's verdict director MAI 17.01–17.-13: "Your verdict must be for plaintiff on plaintiff's claim for damages if you believe: First, defendants drove on the wrong side of the road, and Second, defendants were thereby negligent, and Third, as a direct result of such negligence plaintiff sustained damage, unless you believe plaintiff was not entitled to recover by reason of Instruction No. 4." (Instruction No. 4 was defendants' contributory negligence instruction). Defendants say the verdict director ignored their statutory right as operators of an emergency vehicle to drive in plaintiff's lane of traffic. We cannot agree. Defendants' argument over-

looks the conditional nature of their emergency vehicle defense, and seeks to transform it into an essential element of plaintiff's case.

The rules of the road, § 304.015 subdivision 2, required that defendants drive on the right half of Lindbergh; § 304.022 gave them a conditional right to "disregard regulations governing direction of movement * * * in certain directions." But this statutory exception to the rules of the road is conditioned on several factors, including an "emergency call," sounding an audible signal, having a lighted red lamp visible for 500 feet, and exercising the highest degree of care.

■ ■ Thus the defendants' asserted statutory right to disregard rules of the road was an affirmative defense; that is, a defense relying on facts unnecessary to plaintiff's case. Where a plaintiff has shown that a defendant violated a statutory rule of the road it devolves upon the defendant to show legal justification or excuse for failure to comply. Lochmoeller v. Kiel, Mo.App., 137 S.W.2d 625 [6–8]; Leek v. Dillard, Mo.App., 304 S.W.2d 60 [6–9]; Ruediger v. American Bus Lines, Inc., Mo., 426 S.W.2d 4 [1]. In other jurisdictions this principle of Missouri law has been applied to traffic violations by operators of emergency vehicles, holding that the burden rests upon them to produce evidence showing compliance with the exculpatory statute. See City of Macon v. Smith, 117 Ga.App. 363, 160 S.E.2d 622; Washington v. City and County of San Francisco, 123 Cal.App.2d 235, 266 P.2d 828; Freeman v. Reeves, 241 Ark. 867, 410 S.W.2d 740 [1]. We so hold here.

This principle of affirmative defense was formed by the pleadings. Plaintiff charged defendants with negligently violating the statutory rule of the road by driving on the wrong side of the road. Defendants countered with an answer invoking the emergency vehicle statute, § 304.-022, and charging the plaintiff with contributory negligence by failing to yield the right-of-way given defendants by that stat-ute. The case was submitted on instructions conforming to the pleaded issues. As said, plaintiff's verdict director was MAI 17.01–17.13, Wrong Side of the Road, with a proviso negating defendants' if-you-believe contributory negligence instruction. That instruction exonerated defendants if plaintiff negligently failed to yield the right-of-way. Defendants defined right-of-way by their Instruction No. 8 in the language of § 304.022, subd. 1, subd. 3(2), and subd. 4(2) (d), and § 304.010, subd. 1. Reading these instructions together we hold against defendants' contention that plaintiff's verdict director improperly ignored their emergency vehicle defense.

Defendants cite the center line skidding cases of Jokisch v. Life and Casualty Ins. Co. of Tenn., Mo.App., 424 S.W.2d 111, and Davis v. Werremeyer, Mo., 377 S.W.2d 319, holding it error for a plaintiff to submit that defendant drove on the wrong side of the road when plaintiff's own evidence showed the defendant skidded across the center line. Those cases and authorities cited therein do condemn instructions that submitted wrong-side-of-the-road "without any consideration of the manner in which the crossing occurred." But they are bottomed on the difference between the voluntary act of driving onto the wrong side of the road and the involuntary act of skidding onto the wrong side of the road. Here, defendants' act was admittedly voluntary so the rationale is irrelevant. Further, unlike the cited cases, plaintiff's verdict director here included a proviso negating defendants' submitted emergency-vehicle defense; it did not ignore defendants' asserted right to be where they were.

■ Defendants' Point Relied On makes other criticisms of plaintiff's verdict director, but they are unsupported by citation of authority and argument and are thus deemed abandoned. Civil Rule 83.05(a), (4), V.A.M.R.; Kratzer v. King, Mo., 401 S.W.2d 405 [5].

■ Defendants' last point: In final argument defense counsel flatly declared

Missouri law gave defendants the right to cross onto the other side of the road. Plaintiff objected to this broad statement and the court sustained the objection, explaining by reading the concluding proviso of defendant's right-of-way instruction concerning a very careful person. Defendants neither objected to the court's conduct nor asked for corrective action, and hence have not properly preserved the point for review. Nonetheless we have considered it. Since a trial court has the better opportunity to weigh the effect of jury argument it has broad discretion in restraining argument. And since the trial court has the added opportunity when ruling an after-trial motion to assess the probable effect of its challenged action, appellate courts are reluctant to declare prejudicial error when the trial court has found none. We find none here. Compare Marler v. Pinkston, Mo., 293 S.W.2d 385 [1].

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by CLEMENS, C., is adopted as the opinion of this court. Accordingly, the judgment is affirmed.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.