Emmit B. SHEPARD, Plaintiff-Appellant,

v.

FORD MOTOR COMPANY, Defendant-Respondent.

No. 33523.

St. Louis Court of Appeals, Missouri.

July 28, 1970.

Thurman, Nixon, Smith & Howald, Hillsboro, by Louis Jerry Weber, for plaintiff-appellant.

Robertson, DeVoto, Wieland & Lange, St. Louis, for defendant-respondent.

CLEMENS, Commissioner.

The factual issue here is akin to the classic dispute about which came first, the chicken or the egg: Whether a mechanical defect caused the collision or the collision caused the mechanical defect. The legal issues concern defendant's affirmative converse instruction and the submissibility of plaintiff's case.

In summary, plaintiff's car was rear-ended by Joseph Siliven's logging truck. Siliven had bought the truck from Ross Ford Sales, Inc.; Ross had bought it from Ford Motor Company. Plaintiff sued Siliven, Ross and Ford for $12,500 and then settled with Siliven and Ross for $3,000; the case went to trial against Ford alone.

Plaintiff's theory of recovery, as stated in his brief: "Plaintiff submitted evidence to show Siliven's truck was defective in that the U-bolts on the left side of the rear axle would not hold nuts and immediately prior to the collision this defect allowed the rear axle to slide backward, thereby snapping the brake line and causing Siliven to be unable to stop his truck, thus causing the collision."[1] In defense, Ford contended the U-bolts were not defective and broke as the result of the collision. The jury brought in a verdict for defendant Ford and plaintiff appeals, his single point aimed at Ford's converse instruction.

The parties' contentions require us to describe the truck's rear suspension system. Its main components were elliptical leaf-

---

1. A theory of recovery new to Missouri law: Strict liability of a manufacturer to a *bystander*, not a user of defendant's product. The defendant's verdict removed the issue from this appeal.

type springs on each side resting between the frame above and the axle below. The upper ends of each spring were hooked onto the frame; the lower convex side of each spring rested on the axle. On each side the spring and axle are held together by two long U-bolts, one in front of the axle and one behind it. In making this assembly the closed end of each U-bolt is looped over the top of the spring and the open ends extend downward below the axle. A metal plate, with holes for four U-bolt ends, is slipped upward against the under side of the axle; nuts are then screwed onto the U-bolt ends and tightened. In this manner the axle is firmly attached to the spring.

Plaintiff's evidence about the truck came from Mr. Siliven who owned and drove it and mechanic Eugene Priester, an employee of Ross, who had worked on it.

Mr. Siliven twice had trouble with the U-bolts being loose on the left side. The day after he bought the truck in December, 1966, the nuts came off; this let the rear axle come loose from the spring and slide backward. Mr. Siliven drove the truck back to Ross and new nuts were screwed on tightly. Again, in "April or May" of 1967 three of the four left-side U-bolt nuts came off, and Mr. Siliven went back to Ross to have new nuts put on. He had no further U-bolt trouble before the collision on June 23, 1967.

On that day plaintiff, followed by Mr. Siliven at some unstated distance, was driving south in the inner lane of U. S. Highway 61–67, a four-lane highway. Plaintiff intended to make a left turn off the highway but because of northbound traffic he stopped in the inner southbound lane with his turn signal flashing. In his rear view mirror plaintiff saw the Siliven truck and a transport truck coming toward him side by side at 45 to 50 miles an hour. Mr. Siliven testified that before the collision he was looking to his right at the transport truck and when he looked forward he saw plaintiff's rear brake lights come on. Mr. Siliven said nothing about distance, nor about applying his brakes. The left front corner of Siliven's flat truck bed and its left rear dual wheels crashed into the right rear quarter of plaintiff's halted car. After the collision the truck's left rear axle and spring were found to be separated. The separation had caused the axle to slip backward on the left side and this had severed the braking system; the brake pedal was down on the floorboard. A separation of the axle and the spring could be caused by a prior loosening or breaking of the U-bolts.

Plaintiff's only witness to the post-collision condition of the truck's suspension system was Mr. Siliven. He said the left-side U-bolts were broken off and leaves of the left rear spring were lying in the highway. By stipulation all four U-bolts, without nuts, were received in evidence; although one is broken in two and all are slightly twisted, none of the threaded ends is broken. There was no evidence one way or another about the condition, presence or absence of the left-side U-bolt nuts after the collision.

This was the evidence on which plaintiff relied to prove that the left-side U-bolts came loose before the collision and that this caused Mr. Siliven to be unable to stop his truck.

Ford's evidence came from Mr. James Kitchen, a quality control engineer. He had examined the U-bolts and said that if the U-bolt nuts had been loose for a long period of time there would be "wear marks" on the U-bolts, and he found none. The twisted condition of all four U-bolts indicated to Mr. Kitchen that each was tightly in place when they met with an abnormal force; if they had come loose before the collision the impact would not have twisted them. The condition of the one broken U-bolt showed a "shear-pull

fracture", indicating it had been broken by abnormal force while firmly in place.

Answering a question that hypothesized the facts of the collision and the post-collision condition of the U-bolts Mr. Kitchen gave his opinion that the broken U-bolt was sheared in two at the moment the left rear wheels of the Silivan truck struck plaintiff's car. In his opinion the broken left-rear spring also indicated the U-bolt broke at the moment of impact; had the U-bolt been loose before impact the spring would not have broken. Mr. Kitchen agreed such an impact would cause the left rear axle to move backward and sever the braking system.

For the plaintiff the court gave verdict-directing instruction No. 3: "Your verdict must be for plaintiff if you believe: First, defendant, Ford Motor Company, manufactured the truck which was sold to Joseph Siliven, and Second, the U-bolts on the left side of the rear axle of said truck were defective, and did not work properly at the time said truck left the control of defendant, Ford Motor Company, and Third, Joseph Siliven was thereby unable to stop said truck at the time of the collision, and Fourth, as a direct result, plaintiff sustained damage for which he has not been fully compensated by Joseph Siliven and Ross Ford Sales, Inc."

For the defendant the court gave the challenged affirmative converse instruction No. 5: "Your verdict must be for defendant if you believe the U-bolt broke as a result of the impact on the left rear wheel of the truck mentioned in the evidence." ·

■ On this appeal plaintiff raises just one point: "The trial court erred in giving Instruction No. 5 to the jury because said instruction did not converse any issues submitted in plaintiff's verdict-directing instruction and required a verdict for the defendant even though the jury could have found in favor of plaintiff on every element of plaintiff's verdict-directing instruction." In short, plaintiff is complaining that the affirmative converse instruction did not, as required by MAI 33.01 at page 351, hypothesize an ultimate issue that would defeat plaintiff's claim; that is, the fact the U-bolt *broke upon impact* did not refute plaintiff's submission that the U-bolts *came loose before the collision.* Each party's theory could have been true; one did not necessarily disprove the other.

Defendant justifies its instruction by arguing it was entitled to submit "its own theory of the case," and need not "directly negative the plaintiff's theory." The quoted words came from Bollman v. Kark Rendering Plant, Mo., 418·S.W.2d 39, and Wilson v. Checker Cab Co., Mo., 431 S.W.2d 122. But defendant's argument ignores the underlying requirement that an affirmative converse instruction must submit an "hypothesized ultimate issue which, if true, would defeat plaintiff's claim." MAI 33.-01, p. 351.[2]

Wilson v. Checker Cab Co., *supra*, illustrates this principle. There the plaintiff submitted that she fell while alighting from defendant's cab; defendant affirmatively conversed that submission by directing a verdict for defendant if the jury believed defendant's evidence that plaintiff fell after she alighted and had walked twenty feet from the cab. That fact, if true, necessarily defeated plaintiff's claim. Not so here. The defendant's instruction did not meet the stated requirement since the hypothe-

2. The curious may trace the chain of this principle through the cases of: Rose v. St. Louis Public Service Co., Mo., 205 S.W.2d 559 [1]; Janssens v. Thompson, 360 Mo. 351, 228 S.W.2d 743 [7, 8]; Liebow v. Jones Store Co., Mo., 303 S.W. 2d 660 [5, 6]; Dell'Aria v. Bonfa, Mo., 307 S.W.2d 479 [2]; Pijut v. St. Louis Public Service Co., Mo., 350 S.W.2d 778 [6]; Bollman v. Kark Rendering Plant, Mo., 418 S.W.2d 39 [18]; and Wilson v. Checker Cab Co., Mo., 431 S.W.2d 122.

sized fact did not refute plaintiff's submission.

■ Defendant contends alternatively that any instructional error is harmless since plaintiff did not make a submissible case. The course of our review of this point is charted by settled precedent. If the plaintiff did not make a submissible case the error in defendant's converse instruction is harmless. Bello v. Stuever, Mo., 44 S.W.2d 619, l.c. 621. To determine submissibility we view the evidence favorably to the plaintiff, accepting his evidence as true and giving him the benefit of reasonable inferences from all the evidence. Austin v. Western Auto Supply Co., Mo., 421 S.W.2d 203, l.c. 204. But we measure that evidence against the specific grounds on which the plaintiff submitted his case. Bowers v. Columbia Terminals Co., Mo.App., 213 S.W.2d 663 [1, 3].

Defendant contends there was no evidence to support either of plaintiff's submitted elements that "the U-bolts on the left side of the rear axle of said truck were defective" and that "Joseph Siliven was thereby unable to stop said truck."

A searching review of the transcript fails to uncover any direct evidence the U-bolts were defective just prior to the collision. Nor can we find any direct evidence Joseph Siliven was unable to stop the truck. To establish those two essential elements the plaintiff must rely on circumstantial evidence.

■ Although there is no hard and fast rule for measuring circumstantial evidence to prove essential facts two related principles do prevail. First, the circumstances must point to the desired conclusion with such certainty that the conclusion is reasonably probable without resorting to guesswork or speculation. Green v. Ralston Purina Co., Mo., 376 S.W.2d 119 [1–4]. Second, the evidence offered to support the desired conclusion must "have a tendency" to exclude every other reason-

able conclusion but the one desired. Bowers v. Columbia Terminals Co., Mo.App., 213 S.W.2d 663 [9–10]. We examine each of plaintiff's submissions—defect and causation—in the light of these principles.

■ As said, the plaintiff contends the left-side U-bolts were defective and came loose because they would not hold nuts. The only evidence relating to this concerned conditions long before the collision: That the U-bolts were loose when Joseph Siliven bought the truck seven months before the collision and came loose in April or May before the collision late in June. Plaintiff had no evidence one way or the other about the condition, presence or absence of left-side U-bolt nuts after the collision; the only defect then noted was the one broken U-bolt. Thus nothing about the post-collision conditions indicated a pre-collision defect. In our view the remote, earlier loosening and the post-collision breakage do not reasonably support the plaintiff's desired conclusion that the U-bolts came loose immediately before the collision. Nor do the facts tend to exclude a reasonable conclusion the collision distorted and broke the U-bolts. The plaintiff did not sustain his burden of showing the pre-collision defect.

■ Aside from this failure of proof, and assuming the pre-existing defect arguendo, the plaintiff had the additional burden of showing causation: That the defect caused Joseph Siliven to be unable to stop his truck. Plaintiff's evidence was that after the collision the left rear axle had slipped backward severing the brake line and the brake pedal was down to the floorboard. Even if we assume the defect existed before the collision we are still met with an unaccountable silence about causation. Not one word of testimony shows Mr. Siliven even attempted to apply his brakes before the collision. We know only he was driving 45 to 50 miles an hour and the left side of his truck collided violently with the rear end of plaintiff's car. Again

applying the principles of measuring circumstantial evidence it cannot be said, without resorting to guesswork, that the assumed defect caused the collision. Nor does the fact of collision tend to exclude a reasonable conclusion Joseph Siliven ran his truck into plaintiff's car because he failed to see it in time to take evasive action.

Viewing the evidence favorably to plaintiff we hold it fails to show either the claimed defect or causation with reasonable probability. Since the plaintiff failed to make a submissible case the error in defendant's converse instruction is harmless. The judgment based on the jury verdict for defendant is affirmed.

PER CURIAM:

The foregoing opinion by CLEMENS, C., is adopted as the opinion of this court. Accordingly, the judgment is affirmed.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.