Joseph D. ROBISON and Rhonda S. Robison, Plaintiffs–Appellants,

v.

Jeffrey D. CAMERON and James Brines, d/b/a Brines Wrecker Service, Defendants–Respondents.

No. 25331.

Missouri Court of Appeals, Southern District, Division One.

Oct. 31, 2003.

Joseph A. Robertson, William H. Mc-Donald & Associates, Springfield, for appellant.

William W. Francis, Jr., Terry W. Dodds, Placzek & Francis, Springfield, for respondent.

PHILLIP R. GARRISON, Judge.

This appeal flows from the trial court's order granting a new trial to Jeffrey D. Cameron ("Cameron") and James Brines ("Brines"), d/b/a Brines Wrecker Service (collectively, "Defendants") after a jury verdict and judgment in favor of Joseph D. Robison ("Joseph") and Rhonda S. Robison ("Rhonda") (collectively, "Plaintiffs"). We reverse and remand with directions.

Plaintiffs' suit had its genesis in a motor vehicle collision that occurred on August 21, 1999 in Springfield, Missouri. Joseph, who was driving a 1989 Ford Probe belonging to Rhonda, was entering Glenstone Avenue ("Glenstone"), a north-south street, from a gas station on the east side of the street, intending to turn south. At that location, Glenstone consists of five lanes, two for northbound traffic, two for southbound traffic, and one lane in the center for turning vehicles. In order to turn south onto Glenstone, it was necessary for Joseph to cross the two northbound lanes, which, at that time, were filled with traffic backed up 800 to 900 feet, or two to three blocks to the south, because of a motor vehicle accident that had occurred at the intersection of Glenstone and Division Street, approximately 500 feet north of where Joseph was attempting to cross. After Joseph waited four to five minutes to get across the northbound lanes, drivers of half-ton pickups in each of the northbound lanes stopped to allow Joseph to get through. As Joseph crossed the northbound lanes at approximately two miles per hour, the front of his vehicle entered the center turn lane, and was struck by a wrecker owned by Brines and operated by Cameron.

Cameron had been dispatched to the accident at the intersection of Glenstone and Division. As he traveled north on Glenstone toward that intersection, he encountered the traffic backed up in the northbound lanes and pulled into the center turn lane. He continued in the center turn lane at twenty to twenty-five miles per hour until the collision that is the subject of this suit occurred. The wrecker had neither a siren nor other audible warning system. It was equipped with emergency lights on a light bar, with yellow lights to the front and yellow and red to the rear. It was not equipped with emergency red or blue lights visible from the front of the vehicle. According to Cameron, he turned on his emergency lights when he approached the backed-up traffic, but according to Joseph, Cameron did not do so until after the accident.

Plaintiffs filed suit against Defendants with Joseph claiming personal injuries and Rhonda claiming damage to her vehicle. At the conclusion of the trial, the trial court gave the following verdict directing instruction to the jury at the request of Plaintiffs:

### Instruction No. 6

In your verdict you must assess a percentage of fault to [Defendants], whether or not [Joseph] was partly at fault, if you believe:

First, [Cameron] was traveling in the center turn lane of Glenstone when such lane was reserved for turning,[1] or [Cameron] drove at an

---

1. Section 300.215(4), RSMo Supp. (2002), provides that where there is a special lane for

excessive speed, and he was thereby negligent, and

Second, such conduct of [Cameron] directly caused or directly contributed to cause damage to [Plaintiffs].

In assessing any such percentage of fault against [Defendants], you must consider them both as one party and assess only the fault of [Cameron] as the fault of both.

Defendants offered the following converse instruction, which the trial court gave:

## INSTRUCTION NO. *8*

In your verdict, you must not assess a percentage of fault to [Defendants], unless you believe [Cameron] was driving in the center turn lane of Glenstone when such lane was reserved for turning or [Cameron] drove at an excessive speed and was, therefore, negligent.

Defendants also requested the following alternative converse instructions, all of which were refused by the trial court:

## INSTRUCTION NO. *A*

You must not assess a percentage of fault to [Cameron] if you believe:

First, [Cameron's] wrecker was in the centerlane [sic] of Glenstone because he was responding to an emergency call; and

Second, [Cameron] was not thereby negligent.

## INSTRUCTION NO. *B*

You must not assess a percentage of fault to [Cameron] if you believe:

First, [Cameron's] wrecker was in the centerlane [sic] of Glenstone because he was responding to an emergency call and did not endanger life or property while traveling to the call; and

Second, [Cameron] was not thereby negligent.

## INSTRUCTION NO. *C*

Your verdict must be for [Defendants] if you believe:

First, [Cameron's] wrecker was in the centerlane [sic] of Glenstone because he was responding to an emergency call; and

Second, [Cameron] was not thereby negligent.

## INSTRUCTION NO. *D*

Your verdict must be for [Defendants] if you believe:

First, [Cameron's] wrecker was in the centerlane [sic] of Glenstone because he was responding to an emergency call and did not endanger life or property while traveling to the call; and

Second, [Cameron] was not thereby negligent.

The jury returned a verdict for Plaintiffs, assessing Joseph's damages at $24,000 and Rhonda's at $1600, after deducting twenty percent for Joseph's comparative fault. The trial court entered judgment accordingly. Defendants filed a Motion for Judgment Notwithstanding the Verdict, or in the Alternative for a New Trial. The trial court set aside the judg-

---

making left turns by drivers proceeding in opposite directions a vehicle shall not be driven in that lane except when preparing for or making a left turn from or into the roadway or when preparing for or making a u-turn when otherwise permitted by law. That sub-

section, however, was not in effect when this accident occurred, but no issue is made of that fact on this appeal. A Springfield city ordinance contained similar provisions, a fact conceded by the parties at trial.

ment and sustained the motion for a new trial, holding that "the jury should have been allowed to decide whether or not Defendants' violation of the rules of the road was negligent in this case under all of the circumstances." In two points relied on, Plaintiffs contend that the trial court erred in granting the new trial.

 When a motion for new trial is granted because of prejudicial error in the instructions, the question presented on appeal is one of law to be determined upon the record presented. *Kuzuf v. Gebhardt*, 602 S.W.2d 446, 449 (Mo. banc 1980). Likewise, whether or not a jury is properly instructed is a question of law. *First State Bank of St. Charles v. Frankel*, 86 S.W.3d 161, 173 (Mo.App. E.D.2002). While we are more liberal in upholding the sustaining of a motion for new trial than in denying it, such action can only be affirmed if there was error prejudicial to the party moving for the new trial. *Randolph v. USF&G Companies*, 626 S.W.2d 418, 420 (Mo.App. S.D.1981).

 Plaintiffs' first point relied on, which is dispositive of this appeal, attacks the trial court's granting of a new trial to Defendants "for instructional error because the court was correct in denying [Defendants'] requested converse instruction on justification since (1) [Defendants] had legal alternatives available to them precluding such a defense and (2) [Defen-

dants] did not comply with RSMo. § 304.022,[2] which requires activation of a siren and warning lights before an emergency vehicle is exempt from the traffic laws." Plaintiffs explain this point by arguing that in order to be entitled to claim the defense of justification, or an exemption from the traffic laws governing travel in the center lane, the wrecker should have been equipped with and using emergency lights and a siren as required by Section 304.022.

This point assumes that the trial court's order granting Defendants' motion for new trial was based upon the refused converse instructions. The court merely held, however, that "the jury should have been allowed to decide whether or not Defendants' violation of the rules of the road was negligent in this case under all of the circumstances." It is not clear from this ruling whether the trial court believed that the error was in not requiring that Plaintiffs' verdict director submit the issue of Cameron's justification for being in the center lane, or in refusing one of the four tendered converse instructions.

We note that Defendants objected to Plaintiffs' verdict director at trial because among other reasons, the submission about Cameron traveling in the center lane failed "to take into consideration a wrecker responding to a call and what a wrecker is supposed to do under those circumstances." Defendants also contended that

---

**2.** Section 304.022.3(4) provides, in pertinent part, that a wrecker or tow truck performing emergency service is an "emergency vehicle." Section 304.022.4(2) and (3) provides, in pertinent part:

(2) The driver of an emergency vehicle may:

. . . .

(d) Disregard regulations governing direction of movement or turning in specified directions;

(3) The exemptions herein granted to an emergency vehicle shall apply only when

the driver of any such vehicle while in motion sounds audible signal by bell, siren, or exhaust whistle as may be reasonably necessary, and when the vehicle is equipped with at least one lighted lamp displaying a red light or blue light visible under normal atmospheric conditions from a distance of five hundred feet to the front of such vehicle.

All references to statutes are to RSMo (2000) unless otherwise indicated.

the center lane submission "assumes that [Cameron] had no right to be in the center turn lane under the circumstances as either justified by the law or justified in necessity." They also argued that "[t]he instruction is erroneous in that it does not permit or does not require the jury to determine whether or not there was justification for [Cameron] traveling in the center turn lane at the time of this collision."

Defendants' motion for new trial attacked the verdict directing instruction because it did not permit the jury to deliberate on whether it was negligent for Cameron to be in the center lane given the fact that he was responding to an accident call. The motion also attacked the denial of the four converse instructions. Defendants continue to advance this multi-faceted argument on appeal, claiming that they were prejudiced at trial "because the instructions as submitted to the jury did not allow the jury to consider Cameron's justification or excuse for being in the center lane . . . and whether or not Cameron's conduct was negligent." They also argue that Instruction No. 6, the verdict directing instruction, "did not require the jury to deliberate as to whether or not, pursuant to all the evidence, Cameron was negligent by proceeding in the center turn lane." In other words, Defendants do not base their argument that the granting of the new trial was justified solely upon the refusal to give the converse instructions, but rather suggest that the giving of Plaintiffs' verdict director may have been the reason the trial court granted the new trial.

Rule 78.03 [3] provides that "[e]very order allowing a new trial shall specify of record the ground or grounds on which said new trial is granted." Rule 84.05(c) states in

part, "[w]hen a trial court grants a new trial without specifying of record the ground or grounds on which the new trial is granted, the presumption shall be that the trial court erroneously granted the motion for new trial and the burden of supporting such action is placed on the respondent." The purpose of these rules is to define and limit the issues on appeal. *Dixon v. Bi–State Development Agency,* 636 S.W.2d 696, 698 (Mo.App. E.D.1982).

As previously indicated, we are unable to determine from the trial court's ruling which of those two contentions was the basis upon which it ordered the new trial. An order granting a new trial, due to instructional error, without explaining why the instructions were erroneous, has been held insufficiently specific under the predecessors to Rules 78.03 and 84.05(c). *See Chappell v. City of Springfield,* 423 S.W.2d 810, 811 (Mo.1968). We see no substantive distinction between failing to specify why instructions were erroneous, and failing to specify whether the error was in the giving of an instruction or the failure to give one of those tendered.

Rule 84.05(b) provides that when the burden of supporting the granting of a new trial is shifted to the respondent because the trial court failed to specify the ground upon which the new trial was granted, the appellant may serve on the respondent a statement requesting that the respondent prepare the original brief on appeal. Plaintiffs did not avail themselves of this provision, but Defendants have, by their contentions here, effectively accepted the burden of supporting the trial court's action in granting the new trial. *See Southern Missouri Bank v. Fogle,* 738 S.W.2d 153, 156–57 (Mo.App. S.D.1987).

---

**3.** All references to rules are to Missouri Rules of Civil Procedure (2002) unless otherwise indicated.

The burden of supporting the correctness of the trial court's granting of a new trial is met if the motion for new trial raises some ground supporting the action of the trial court. *Id.* at 157. If the granting of the new trial was required as a result of one or more of the points raised in the motion for new trial and in Defendants' brief, we must affirm. *Id.*

Defendants' contention that Plaintiffs' verdict director should have required a finding that Cameron was negligent for being in the center turn lane, rather than permitting a verdict against Defendants simply because, as submitted, he was traveling in the center turn lane when such lane was reserved for turning, is not well taken. That portion of the verdict director was submitted on a negligence per se theory. In *Cheek v. Weiss,* 615 S.W.2d 453, 457 (Mo.App. E.D.1981), the court said:

> [W]hen it is shown that a party to an action has violated a duty or fixed standard created by statute or ordinance, a prima facie case of negligence or contributory negligence is made for the jury. It then devolves upon that party to show legal justification or excuse for failure to comply with the statute or ordinance. By way of example, the operator of an emergency vehicle that violates the provisions of a traffic ordinance or statute has the burden of proving that it was operating within the terms of the statute excusing emergency vehicles from violations of the traffic control laws under certain circumstances.

Even more germane here is *Robinson v. Gerber,* 454 S.W.2d 933, 936 (Mo.App.St.L. 1970), involving a collision between an automobile and an ambulance being driven on the wrong side of the road to get around vehicles backed up from the scene of three different automobile accidents. The plaintiff's submission was based on the ambulance being driven on the wrong side of the road. *Id.* at 937. The defendants argued that the plaintiff's verdict director was erroneous because it ignored their "statutory right as operators of an emergency vehicle to drive in plaintiff's lane of traffic." *Id.* The court, however, said that the defendants' argument overlooked the "conditional nature of their emergency vehicle defense, and [sought] to transform it into an essential element of plaintiff's case." *Id.* at 937–38. The court said that under Section 304.022, the defendants had a conditional right to disregard regulations governing direction of movement, "[b]ut this statutory exception to the rules of the road is conditioned on several factors, including an 'emergency call,' sounding an audible signal, having a lighted red lamp visible for 500 feet, and exercising the highest degree of care."[4] *Id.* at 938. Accordingly, the court held that the statutory right to disregard the rules of the road was an affirmative defense in that it relied on facts unnecessary to the plaintiff's case and, as such, it devolved upon the defendant to show legal justification or excuse for failure to comply with the statutory rules of the road. *Id.* It also noted, with approval, that other jurisdictions had applied these rules to traffic violations by operators of emergency vehicles, "holding that the burden rests upon them to produce evidence showing compliance with the exculpatory statute." *Id.*

We are cognizant of Defendants' argument that they are not restricted to the statutory exception contained in Section 304.022, but that they also are entitled to a common law exception based on justification or excuse, citing cases such as *Lincoln*

---

4. Section 304.022.4(3) conditions the applicability of the exception on there being, in addition to an audible warning, at least one lighted lamp displaying a red or blue light visible for 500 feet to the front of the emergency vehicle.

*v. Ry. Express Agency, Inc.* 359 S.W.2d 759, 765 (Mo.1962). There, the supreme court held that traffic regulations are not unyielding, and that duties imposed by them may be qualified by circumstances such as considerations of safety, emergency conditions, or impossibility. The cases cited by Defendants for this proposition did not, however, involve emergency vehicles. Clearly, the courts in *Robinson* and *Cheek* determined that an excuse from following the statutory rules of the road by an emergency vehicle was conditioned upon compliance with Section 304.022. Consistent with this interpretation is the fact that the legislature provided in Section 304.022(3):

> The exemptions herein granted to an emergency vehicle shall apply *only* when the driver of any such vehicle while in motion sounds audible signal by bell, siren, or exhaust whistle as may be reasonably necessary, and when the vehicle is equipped with at least one lighted lamp displaying a red light or blue light visible under normal atmospheric conditions from a distance of five hundred feet to the front of such vehicle. (emphasis added).

■ In construing statutes, a primary rule is that we are to ascertain legislative intent from the words used, considering the words in their plain and ordinary meaning. *State of Missouri ex rel. State of Ill. v. Schaumann*, 918 S.W.2d 393, 396 (Mo.App. E.D.1996). With reference to Section 304.022.4(3) the legislature provided that the exemptions from the specified rules of the road for emergency vehicles shall apply "only" if they utilize the specified emergency warning equipment. Under Section 304.022.3(4), in order for a wrecker to come within the definition of an emergency vehicle at a given point in time, it must be performing emergency service. Defendants argue that Cameron was performing such emergency service when he drove in the center turning lane of Glenstone. To contend that he may do so in violation of the rules of the road, without complying with the conditions imposed by the legislature, would effectively dilute that legislation and render it meaningless. The legislature, however, will not be charged with having done a meaningless act. *Lombardo v. Lombardo*, 35 S.W.3d 386, 390 (Mo.App. W.D.2000). To the extent that the trial court may have granted the new trial because of the failure of Plaintiffs' verdict directing instruction to require the jury to find lack of justification or excuse for Cameron driving in the center turning lane, it was erroneous.

■ Defendants also contend that the trial court correctly ordered a new trial because of its erroneous decision not to give one of the four converse instructions they tendered. Each of these instructions was an affirmative converse instruction in that the jury was instructed either to find for Defendants or not assess a percentage of fault to Cameron "if [it] believe[d]" the propositions hypothesized in the instruction. Significantly, the tendered converse instructions did not refer to the substantive requirements of Section 304.022 (an audible signal and at least one lighted lamp displaying a red or blue light visible from a distance of 500 feet to the front of the vehicle), but required a defense verdict upon a finding that Cameron's wrecker was in the center lane because he was responding to an emergency call, and was not thereby negligent, or was in the center lane because he was responding to an emergency call, did not endanger life or property while traveling to the call, and was not thereby negligent. However, as indicated above, a finding of compliance with the requirements of Section 304.022 was necessary in order to justify Cameron's emergency vehicle being driven in the

center lane in violation of the rules of the road set by statute or ordinance.

Additionally, the four tendered converse instructions would have directed a verdict for Defendants if the jury found, under the hypothesis of each instruction, that Cameron was justified in driving in the center lane. Notwithstanding the fact that, as indicated above, the hypothesis presented in each instruction was insufficient to provide a justification for Cameron's emergency vehicle being driven in that lane, each instruction also would have directed a verdict for Defendants if the jury found for them on the issue of the wrecker being in the center lane without regard to Plaintiffs' separate and disjunctive submission of excessive speed. In other words, the tendered converses required a verdict for Defendants even if the jury found for Plaintiffs on the issue of excessive speed submitted in the verdict director.

■ An affirmative converse instruction must submit a hypothesized issue which, if true, would defeat the plaintiff's claim. *Morse v. Johnson,* 594 S.W.2d 610, 614 (Mo. banc 1980); *Oliver v. Bi–State Development Agency,* 494 S.W.2d 49, 52 (Mo.1973); *Tierney v. Berg,* 679 S.W.2d 919, 921 (Mo.App. E.D.1984); *Shepard v. Ford Motor Co.,* 457 S.W.2d 255, 258 (Mo. App.St.L.1970). In *Shepard,* the court found that an affirmative converse was erroneously given because it did not refute the plaintiff's submission, noting that "[e]ach party's theory could have been true; one did not necessarily disprove the other." *Id.* An affirmative converse that submits an issue that does not, even if true, defeat the plaintiff's claim is erroneous. *Hiller v. Diestelhorst,* 820 S.W.2d 522, 524 (Mo.App. E.D.1991). For this reason, the converse instructions tendered by Defendants were correctly refused by the trial court.

For the reasons discussed in this opinion, we conclude that the trial court erroneously granted Defendants' motion for new trial regardless of whether that ruling was based on the failure of Plaintiffs' verdict director to submit the issue of justification, or the failure to give any of the four converse instructions tendered by Defendants. The order setting aside the judgment entered on the jury verdict and granting a new trial is reversed. The case is remanded to the trial court with directions to enter judgment based on the jury verdict.

BARNEY, P.J., and PREWITT, J., concur.