**John Miller LONGMIER, et al., Plaintiffs-Respondents,**

v.

**Burt W. KAUFMAN, et al., Defendants-Appellants.**

**Nos. 46595 & 46621.**

Missouri Court of Appeals, Eastern District, Division Eight.

Dec. 20, 1983.

David E. Horn, St. Louis, for defendants-appellants.

Gary Thomas Carr, St. Louis, for plaintiffs-respondents.

GAERTNER, Judge.

Plaintiffs, the general partners of I.M. Simon and Company, (Simon) are engaged in the investment and stockbrokerage business. From January 27, 1970 to July 31, 1975 Simon occupied space in the Security Building in the City of St. Louis pursuant to a written lease. After the expiration of the lease Simon continued to occupy the space as a month to month tenant. The Security Building is owned by defendant St. Louis Real Estate Ventures, a partnership, which in turn leases the building to defendant Pierre Chouteau Properties, Inc., a corporation. Defendant Burt W. Kaufman is the executive director of St. Louis Real Estate Ventures and the President and sole shareholder of defendant Pierre Chouteau Inc. and is the manager of the Security Building.

In March 1977, Kaufman initiated negotiations with certain partners of Simon for a new lease. Factors included in these negotiations were the rent per square foot, extra space to be occupied by Simon, renovation, remodeling and alterations. It is Simon's position that the negotiations did not culminate in a final agreement on all terms of a new lease. Defendants, although admitting that no new written lease was ever executed, contend that the terms of a new lease were orally agreed upon on December 5, 1977 and that remodeling work was commenced shortly after that date. On March 10, 1978 Simon gave written notice to defendants of its intention to terminate its tenancy and vacate the premises as of May 31, 1978. On that latter date, Simon did move to new quarters but left behind certain cabinets, shelving and other items. On July 31, 1978 most of these items were removed by Simon and the following day, August 1, 1978, Simon delivered the keys to the premises to Kaufman.

This litigation was initiated by the filing of a petition for declaratory judgment by Simon. In three counts Simon prayed the court to declare: (1) that no lease agreement had been entered into, (2) that its month to month tenancy terminated as of May 31, 1978, and (3) that it had no obligation to defendants to pay any cost of improvements. Defendants filed a joint answer to this petition in which they sought a declaration that Simon was bound by a five year lease and owed unpaid rental of $158,620.00 thereon, in Count II, a declaration that no month to month tenancy existed in 1978, and in Count III, a declaration that Simon owed defendants $30,000 for the cost of remodeling and renovation.

Defendant Pierre Chouteau Properties, Inc. also filed a counterclaim alleging in Count I, the repudiation by Simon of a five year lease allegedly entered into as of January 1, 1978 and, seeking damages in the amount of $158,620.00 in Count II, alleging that in reliance upon Simon's representations that a five year lease would be executed, it undertook to remodel and renovate the premises at a cost of $30,000, but that Simon's representations were false and made with the intent to defraud. Count II prayed for actual damages of $30,000 and punitive damages of $100,000.

Simon then filed a motion to dismiss the counterclaim and a motion for summary judgment on all counts of its petition and on the counterclaim. This motion was supported by affidavits and defendants filed counter-affidavits. The trial court, on July 2, 1979, sustained Simon's motion for summary judgment as to Count I of the petition

and as to Count I of the counterclaim. It sustained the motion to dismiss Count II of the counterclaim but granted leave to file an amendment. The motions for summary judgment were overruled as to Counts II and III of the petition and as to Count II of the counterclaim. An amended Count II of the counterclaim was duly filed setting forth, in exhaustive evidentiary detail, the claim of defendant Pierre Chouteau Properties, Inc. for actual and punitive damages for false and fraudulent representations allegedly made by Simon. The court granted the request of defendant Pierre Chouteau Properties, Inc. for a severance and jury trial on its amended counterclaim.

Counts II and III of the petition for declaratory judgment then proceeded to trial without a jury. The trial court, on October 28, 1981, entered an interlocutory order declaring that a month-to-month tenancy was terminated by Simon effective September 30, 1978 and that Simon was liable to defendants for rents for the months of June, July, August and September 1978. Further, the court declared that Simon had no obligation to any of defendants for the cost of improvements or repairs to the premises. Simon moved for summary judgment on the severed counterclaim, which motion was sustained on October 25, 1981. Defendants thereupon filed their notice of appeal from the judgments of July 2, 1979, October 25, 1981 and October 28, 1981 and Simon filed a notice of cross-appeal from the judgment of October 28, 1981.[1]

 Defendants' first point on appeal alleges error in the sustaining of the motions for summary judgment as to Count I of the petition and Count I of the counterclaim. These counts concerned the existence vel non of a new five year lease. Defendants do not dispute the fact that no new lease was executed by the parties. However, they contend that Simon is estopped from denying the creation of a five year lease commencing January 1, 1978.

"In ruling on a motion for summary judgment, the trial court and the appellate court must scrutinize the record in the light most favorable to the party against whom the motion for summary judgment was filed and against whom judgment was rendered, and must accord to that party the benefit of every doubt. *Edwards v. Heidelbaugh,* 574 S.W.2d 25, 26 (Mo.App.1978). Summary judgment is a drastic remedy and is therefore inappropriate unless the prevailing party has shown by unassailable proof to be entitled thereto as a matter of law. Rule 74.04(h); *Seliga Shoe Stores, Inc. v. City of Maplewood,* 558 S.W.2d 328, 331 (Mo. App.1977). If a genuine issue of fact exists, summary judgment cannot be granted. A genuine issue of fact exists when there is the slightest doubt about the facts. *Williams v. Irwin-Willert Company,* 604 S.W.2d 640, 642 (Mo.App. 1980). However, the fact in doubt must be a material one which has legal probative force as to a controlling issue. *Peer v. MFA Milling Company,* 578 S.W.2d 291, 292 (Mo.App.1979)."

*Union Elec. Co. v. Clayton Center LTD,* 634 S.W.2d 261 (Mo.App.1982).

The affidavits filed in support of the motion for summary judgment and those filed in opposition reflect a dispute over whether or not an agreement to all the terms of the

---

1. The absence from the legal file of any formal judgment entry collecting and making final the several judgments entered in this cause, would be grounds for dismissal of this appeal. "We should not approve an approach which makes it necessary for the appellate court to decide whether a resolution of the case as to one defendant makes the case moot as to the other, or which makes it necessary for the appellate court to piece and tack together various parts of the record, none of which purport to be a final judgment, and conclude therefrom that collectively they amount to a final judgment."

*Bolin v. Farmer's Alliance Mutual Insurance Co.,* 549 S.W.2d 886, 891 (Mo. banc 1977). Despite this admonition, we have tediously pieced through the legal file and determined that with the judgment entered October 28, 1981, although labeled "interlocutory," final disposition of all issues as to all parties was achieved. Therefore, we have jurisdiction. Only because of the injustice to the litigants who have a justifiable desire to see this matter finally concluded, we decline to adopt the suggestion of *Bolin.*

proposed lease had been reached. However, in view of the undisputed fact that no written lease was signed, the disputed facts do not relate to a material or controlling issue. Accepting as true defendants' contention that the oral agreement to enter into the lease was made on December 5, 1977, until the lease was signed by the parties it could amount, by operation of law, to no more than a month to month tenancy. Section 441.060(2) RSMo 1978 provides as follows:

"2. All contracts or agreements for the leasing, renting or occupation of stores, shops, houses, tenements or other buildings in cities, towns or villages, and of stores, shops, houses, tenements or other buildings except when such leasing, renting or occupation is as tenant of real estate used or rented for agricultural purposes, other than garden purposes, not made in writing, signed by the parties thereto, or their agents, shall be held and taken to be tenancies from month to month, and all such tenancies may be terminated by either party thereto, or his agent, giving to the other party, or his agent, one month's notice, in writing, of his intention to terminate such tenancy."

Attempting to avoid the destructive impact of § 441.060(2) upon their theory, defendants argue that Simon is estopped from asserting the statute. This argument is completely refuted by *Shaffer v. Hines,* 573 S.W.2d 420, 422 (Mo.App.1978). There, in rejecting the invocation of the doctrine of estoppel in an attempt to evade the strictures of the Statute of Frauds, this court stated: "[t]he doctrine is often referred to as a shield against fraud. It is not, however, available for use as a sword. It cannot be used to create a cause of action, if the action did not otherwise exist. Its purpose is not to bring about a gain but to protect from loss."

Defendants' reliance on *Hamburger v. Hirsch,* 212 S.W. 49 (Mo.App.1919) is misplaced. There the predecessor of this court approved the admission of parol evidence of an agreement to extend the date for the giving of notice of a termination of a written lease. It was there held the plaintiff

was estopped from asserting the Statute of Frauds. The decision has not been followed in any other case involving a lease or the sale of an interest in land. Further, it has been tacitly overruled by this court in *Shaffer.* More importantly, however, admission of parol evidence regarding a modification of a single provision of a written lease is far different than the creation of a long term lease which is prohibited by the statute. The above quoted language from *Shaffer* has much more applicability to this case where we are concerned with the lease statute, § 441.060, than in *Shaffer,* which concerned the Statute of Frauds, § 432.010. The latter is a rule of evidence, rendering inadmissible testimony regarding oral agreements pertaining to matters within its purview so as to cause such agreements to become legally unenforceable. The former, however, relates to a matter of substantive law, declaring the legal relationship of parties to an unwritten lease to be that of month to month tenancy. It deals neither with the admissibility of evidence nor with the enforceability of the agreement. Rather the statute enunciates the public policy of Missouri that unwritten lease agreements shall not be construed as creating any obligation beyond that of a month to month tenancy. Paraphrasing *Shaffer,* it is the legislature, not the plaintiffs, which has made the contract in this case.

As we read the defendants' brief, they further contend that Simon should be prohibited from denying its agreement to execute the lease because of promissory estoppel. Although earlier cases in this state have used the terms estoppel in pais, or equitable estoppel, and promissory estoppel interchangeably, there is a distinction. The former is defensive or negative in character—precluding a party by reason of his conduct from asserting a right he otherwise would have had. Blacks Law Dictionary, 5th Edition, pg. 495 (1979). Promissory estoppel, on the other hand, makes binding a promise which induces action or forbearance on the part of the promissee if injustice can be avoided only by enforcement of the promise. *Id.* pg. 1093. The distinction has no relevance here. First of all, since

390

the central ingredient of promissory estoppel is the avoidance of injustice, there is no reason why that doctrine should not, to the same extent as equitable estoppel, be "impotent to save transactions from the fatal infirmity of being in violation of the law." *Watkins v. Floyd,* 492 S.W.2d 865, 872 (Mo. App.1973). Even if the doctrine were available to defendants it would be of no benefit to them on this point. They seek to establish a five year lease by precluding Simon from denying its oral agreement to execute such a lease. This issue was determined by summary judgment which requires the assumption that Simon did in fact make such an agreement. The trial court did not err in entering summary judgment on Count I of the petition and Count I of the counterclaim.

■ The second and final point asserted on appeal by defendants, with citations omitted, reads as follows:

"The trial court erred in its finding after the trial on September 8 and 9, 1981 that 'plaintiffs (respondents) have no obligation to pay defendants (appellants) or any of them the cost of improvements or repairs to the premises the plaintiffs occupied as tenants prior to the termination of their tenancy on September 30, 1978' (which matter will be treated in the argument) and in sustaining respondents' motion for summary judgment as to counterclaim of defendant Pierre Chouteau Properties, Inc., Count II—amended.

Said Count II—amended stated a cause of action for fraud against respondents.

In said Count II—amended actual and punitive damages were sought.

Even if no actual damages were shown on said Count II, nominal damages would be recoverable for the proved invasion of a legal right of appellant Pierre Chouteau Properties Inc.

Punitive damages may be assessed though the recovery of actual damages be only nominal."

That these abstract statements of law are glaringly deficient in meeting the requirements of Rule 84.04(d) is obvious. The mere setting forth of abstract statements of law does not point out to the court "wherein and why" the rulings of the trial court are erroneous. Reference to facts in evidence, or before the court by affidavit in the case of summary judgment, which support and lead to the conclusions asserted as error is contemplated and required under the rule. *Empire Gas Corporation v. Small's L.P. Gas Company,* 637 S.W.2d 239 (Mo.App.1982). However, since previous notice of dismissal together with an opportunity to correct the errors has not been given, as provided by Rule 84.08, we are constrained to rule upon what we conceive to be defendants' contentions.

Defendants' second point relied on appears to raise two distinct issues: (1) error by the trial court in finding after a hearing that Simon has no obligation to pay any of the defendants for the cost of improvements and repairs, and (2) error in subsequently sustaining Simon's motion for summary judgment on the amended Count II of the counterclaim which sought actual and punitive damages for fraudulently inducing defendants to make such expenditures.[2]

■ In reviewing a court tried case, we must sustain the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. *Trustees of Exermont Subdivision v. LaDriere,* 636 S.W.2d 90 (Mo.App.1982). We must further defer to the better position of the trial court to judge the credibility of the witnesses, their sincerity, character and other trial intangibles which cannot be dis-

**2.** Defendants did not plead estoppel as an affirmative defense as required under Rule 55.08. Although not evident from the legal file, we assume estoppel was argued without objection before the trial court on the motions for summary judgment on Count I of the petition and Count I of the counterclaim. However, at the hearing on Counts II and III of the petition defendants did not object to the testimony of

Simon partners denying an oral agreement to enter into a lease. Having failed to plead estoppel, to object to testimony on that ground or to assert on appeal that estoppel is relevant to any issue other than the existence vel non of the five year lease, we do not consider the applicability of estoppel except as it may relate to the judgments entered on Count I of the petition and Count I of the counterclaim.

cerned from a reading of the transcript and we should not set aside a judgment as being "against the weight of the evidence" in the absence of a firm belief that the judgment is wrong. *Murphy v. Carron,* 536 S.W.2d 30, (Mo. banc 1976); *H.___ v. H.___,* 637 S.W.2d 432, 434 (Mo.App.1982).

■ Count III of the petition sought a declaration by the court that Simon was not obligated to pay for the cost of improvements. The trial court found in favor of Simon on this point and so declared by its "interlocutory" judgment on October 28, 1981. We have searched defendants' brief in vain to find any contention that this finding is unsupported by or even against the weight of the evidence, nor do they contend therein that such a declaration erroneously applies the law. In their reply brief they seem to contend that Simon was under a contractual obligation to pay for the improvements as distinguished from their argument relating to their counterclaim for damages for Simon's allegedly fraudulent inducement to make such expenditures. However, the trial court found no such contract. The only evidence of an agreement was the testimony of Kaufman that on December 5, 1977 one of the Simon partners, Mr. Pixley, and he shook hands on a deal. This was denied by Pixley, and both he and the administrative management partner of Simon denied that any partner had authority to enter into such an agreement without approval of the remaining partners. The trial court obviously believed this denial. We must defer to his judgment regarding the credibility of witnesses.

The main thrust of defendants' argument on Point II relates to the granting of Simon's motion for summary judgment on Count II of their counterclaim in which they alleged that Simon falsely represented an intention to enter into the five year lease thereby inducing defendants to incur remodeling and renovation expenses. They argue the declaratory judgment trial involved an issue of contractual obligation, whereas the counterclaim involved a tort claim seeking actual and punitive damages. Therefore, defendants contend, res judicata does not apply. This argument misses the point.

"Traditionally, res judicata (claim preclusion) precludes the same parties or their privities from relitigating the same cause of action whereas collateral estoppel (issue preclusion) precludes the same parties or those in privity from relitigating issues which have been previously litigated. . . . A critical distinction is made between claim preclusion and issue preclusion: where the question is one of issue preclusion the established rule is that the judgment in the prior adjudication operates only as to the issues, points, or questions actually litigated and determined and not as to matters not litigated in the former action even though such matters might properly be determined therein."

*Am. Polled Hereford v. City of Kansas City,* 626 S.W.2d 237, 241 (Mo.1982).

The cornerstone of defendants' claim of fraudulent misrepresentation as alleged in the counterclaim is the meeting on December 5, 1977 at which Kaufman testified Pixley agreed to the lease terms including payment for building improvements. If such an agreement had been made, regardless of whether or not it falsely represented Simon's intention, it would have contractually obligated Simon to pay the cost of the improvements undertaken in reliance thereon. But the trial court's finding in the declaratory judgment trial was to the effect that Pixley made no such agreement. Defendants acknowledge in their reply brief the contract claim and the fraud claim are "founded substantially on the same factual situation." Having failed to convince the trial judge that Pixley made any such representation, defendants are precluded from seeking a contrary finding by a jury.

■ Simon's cross-appeal from the judgment declaring the month to month tenancy was not terminated until September 30, 1978 and that Simon is liable to defendants for rental payments for the months of June, July, August and September, 1978, is equally without merit. The letter of March 10, 1978 notifying defendants of Simon's intention to terminate the tenancy on May 31, 1978 would have sufficed to comply with the requirements of § 441.060(2), as Simon

contends. However, the retention of keys to the premises plus the failure to remove items of property until August 1, 1978 are indications of continued control and possession which adequately support the trial court's finding of a holding over until that date. *Pfeiffenberger v. Scotts Cleaning Company,* 144 S.W.2d 183, 188 (Mo.App. 1940). The trial court, after hearing evidence and seeing photographs of items left on the premises, did not accept Simon's argument that this property was valueless and abandoned. We find this ruling amply supported by evidence and not clearly erroneous. Therefore, we are constrained to uphold the judgment of the trial court. *Payne v. Barnes,* 638 S.W.2d 299 (Mo.App. 1982).[3]

The judgment of the trial court is affirmed in all respects.

CRIST, P.J., and KAROHL, J., concur.

---

**3.** On its cross-appeal Simon denies liability for any rent after May 31, 1978. It does not challenge the amount of rent found due by the trial court. Therefore, we do not address the propriety of the trial court's finding that rent was due for four months ending September 30, 1978.