**FOOTWEAR UNLIMITED, INC.,
Plaintiff-Respondent,**

v.

**Herbert M. KATZENBERG,
Defendant-Appellant.**

**No. 47258.**

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 18, 1984.

Gerard T. Carmondy, St. Louis, for defendant-appellant.

David G. Dempsey, Clayton, for plaintiff-respondent.

KELLY, Presiding Judge.

Herbert M. Katzenberg, appeals from an order of the Circuit Court of St. Louis County, Missouri, granting Footwear Unlimited, Inc., a new trial following a jury verdict of $10,000 on Katzenberg's counterclaim because of instructional error.

On appeal the appellant, defendant in the trial court, contends that the trial court erred in granting a new trial on his counterclaim on the grounds (1) that the agreement was unenforceable by reason of the Statute of Frauds, § 432.050 V.A.M.S., because respondent waived this defense, a written memorandum of the agreement existed, and application of the Statute of Frauds would have created a tenancy longer than the period of rental claimed and awarded, and; (2) Instruction No. 12 directed a verdict based upon a theory of fraud which was not supported by the evidence because respondent pleaded and proved a case of promissory estoppel which clearly

supported the giving of Instruction No. 12. We affirm.

The facts supported by the evidence at trial are that appellant Katzenberg owned warehouses in Fenton, Missouri. In April or early May of 1979, Eugene Moreland, Footwear's Director of Operations, noticed some vacant space in one of Katzenberg's Fenton warehouses. The building Moreland first noticed had 40,000 square feet and an adjacent warehouse, (also owned by Katzenberg), had 145,600 square feet divided into six separate units. When the President of Footwear, Cohen, heard about the Katzenberg warehouses in Fenton, he initiated negotiations to lease the space.

On May 1, 1979, Footwear's real estate agent, Harris Frank, telephoned Katzenberg and advised him of Footwear's interest in leasing between 20,000 and 40,000 square feet of space. Katzenberg then wrote Frank and advised him of the availability of two contiguous units of 20,400 square feet each. Next Katzenberg received a telephone call from Cohen regarding the possibilities of a leasing arrangement and they agreed to meet on May 14, 1979, at the Katzenberg properties.

As scheduled, Katzenberg met with Cohen, as well as Frank, Eugene Moreland, Footwear's Director of Operations, and Charles Seib, Footwear's Controller, at the property on May 14, 1979. The group examined the space for about an hour and Katzenberg answered their questions. Then, they went to lunch together and negotiations regarding the lease took place in earnest. Footwear agreed to make improvements on the building and the parties agreed on a price per square foot. At first, Katzenberg asked for $1.30 per square foot but then reduced his rental to $1.20 in consideration for the improvements Footwear intended to make during its tenancy. The result was a monthly rental of $4,080. Cohen and Katzenberg accepted this proposal and agreed to a ten year lease. Cohen and Katzenberg shook hands and Katzenberg advised Cohen that a lease would be sent incorporating the terms of their agreement.

After the luncheon meeting, the group adjourned to Footwear's premises and Cohen tendered to Katzenberg a check for $8,160, half for the first month's rent and the other half for a security deposit.

Significantly, Katzenberg mentioned to Cohen during the luncheon meeting that another prospective tenant, Gene Deidrick wanted to lease the same space that Footwear wanted to lease. Deidrick desired an immediate lease at a higher rate of rental, $6,120 per month, although Deidrick only wanted to rent for a period of six months. After Footwear paid the first month's rent and security deposit, Katzenberg told Cohen he would inform Deidrick that the warehouse was no longer available. Cohen approved of this action and Katzenberg notified Deidrick of the dealings immediately after the meeting. Deidrick testified that if Katzenberg had not leased the space to Footwear, he would have entered into a six month lease for the same space.

Footwear received the keys to the warehouse on the 14th of May. It changed the electricity for the warehouse, specifically 2047–2061 Hitzert Court, to its name on May 31st. Footwear cleaned out rubbish and debris and obtained bids on lighting, heating and other construction work for the improvements it intended to make.

On May 18, 1979, Katzenberg sent Cohen a letter enclosing a lease, which he believed incorporated the terms of the agreement reached by the parties on May 14, 1979. This letter said:

... "of a lease [that] I believe incorporates all the terms that we agreed upon."

... "on the assumption that we are in full accord, you have my permission to take immediate possession."

Cohen received the letter and reviewed the enclosed lease, in particular the term of ten years and the rental charges. Cohen signed the lease and sent it to his attorney for approval. The attorney made some changes on the lease. Although the parties dispute the materiality of these changes, Katzenberg testified that the changes were acceptable to him. *Footwear* introduced

the lease signed by Cohen into evidence. Katzenberg never signed the lease because Cohen never delivered the lease to him after signing it. Footwear entered the premises before signing the lease. Footwear admits in its brief that their possession after the 14th of May was a non-controverted fact.

On May 29, 1979 Cohen called Katzenberg and discussed specific improvements that Footwear would make in the warehouse. Cohen told Katzenberg he signed the lease and mailed it to Katzenberg.

On May 31, 1979, Cohen called Katzenberg and complained about the costs of the improvements, specifically regarding the heat. On the same day, Frank called and told Katzenberg that the costs of improvements had created a "crisis." The next day, June 1st, Frank called Katzenberg again and told him the deal was "dead." Frank told him the decision perhaps came from "higher up" and that Footwear "was thinking of its entire operation," which could require a total of 60,000 to 80,000 square feet. Frank said that Katzenberg's warehouse space was not suitable for Footwear's entire operation, from both a physical and an economic point of view. Coincidently, two weeks later Footwear purchased other property on which it eventually constructed its current facilities.

After receiving the May 31st telephone call from Frank, Katzenberg contacted Deidrick and asked if he would still be interested in renting the property. Deidrick was no longer interested. Eventually, Katzenberg leased the warehouse space to other tenants. In November, 1979, he leased 2061 Hitzert Court and in December, 1979, he leased 2047 Hitzert Court, thereby losing approximately $22,000 in rental he expected to receive from Footwear.

Subsequently, Footwear demanded that Katzenberg return the $8,160, which Footwear tendered as the first month's rent and security deposit. Katzenberg refused to return the money. Footwear filed a two-count petition in St. Louis County Circuit Court, seeking return of the $8,160, and punitive damages in the amount of $50,000. Katzenberg denied liability and counterclaimed in two counts, Count One for $22,520 in lost rentals caused by Footwear's breach of contract, and alternatively in Count Two for $33,660, which Deidrick would have paid in rentals, based on a promissory estoppel theory of recovery.

The trial commenced on January 11, 1983. After four days of trial, the jury returned a verdict in favor of Katzenberg and awarded him $10,000 in damages on his counterclaim.[1]

On April 28, 1983, the trial court sustained Footwear's Motion for New Trial "because of error in the giving of Instruction No.'s 10 and 12." Both of these instructions were verdict directors on Katzenberg's counterclaim. Katzenberg appeals the order for a new trial.

In its order granting Katzenberg's motion for new trial on the grounds it erred in submitting Instruction No. 10, the trial court specified that the instruction was erroneous for the reason "it sought recovery under an agreement for lease of property which is unenforceable as being in violation of the Statute of Frauds, § 432.050, RSMo 1978." Appellant argues that Footwear waived the defense because not only did Footwear fail to object to the introduction of evidence of the oral agreement but, in fact, presented evidence of the oral agreement and even introduced the written lease into evidence as part of its case in chief.

Instruction No. 10, a modification of MAI 26.06, Breach of Bi-Lateral Contract, read:

"Your verdict must be for defendant on his claim if you believe:

First, plaintiff and defendant entered into an agreement whereby plaintiff agreed to rent warehouse space from defendant at 2047 and 2061 Hitzert Court for a period of ten years at $4,080 per month for the first year, and defendant

---

1. From the legal file it is impossible to ascertain whether this verdict was rendered on Count I or Count II of Katzenberg's counterclaim. "Verdict Form B" did not specify whether the verdict was based upon Count I or Count II of the Katzenberg counterclaim.

agreed to provide the warehouse space to plaintiff, and

Second, defendant performed his agreement, and

Third, plaintiff took possession of the premises and paid the first month's rent, and

Fourth, plaintiff failed to perform its agreement, and

Fifth, unless you believe defendant is not entitled to recover on his claim by reason of Instruction No. 11."

Section 432.050, RSMo 1978[2] provides that all leases of any messuages, lands, tenements or hereditaments, made or created by parol, and not put in writing and signed by the parties so making or creating the same, or their agents lawfully authorized by writing, shall have the same force and effect of leases or estates at will only, and shall not, either in law or equity, be deemed or taken to have any other or greater force. Such tenancy may be terminated by either party thereto, or his agent, giving to the other party, or his agent, one month's notice, in writing, of his intention to terminate when the building is situated in a city, town or village and not used for agricultural purposes.

■ In support of its position that respondent waived the defense of the statute of frauds appellant relies on *Justus v. Webb*, 634 S.W.2d 567 (Mo.App.1982) and *Sheinbein v. First Boston Corporation*, 670 S.W.2d 872 (Mo.App.1984). Both of these cases held that pleading the statute of frauds alone is not sufficient to maintain it as a valid defense and that the failure of the party pleading the defense to object to offered evidence of the oral agreement constituted a waiver of the protection of the statute. *Justus*, 634 S.W.2d at p. 569 and *Sheinbein*, 670 S.W.2d at p. 879[21, 22] (Mo.App.1984). The record shows that respondent presented evidence of all the essential elements of the oral agreement and even introduced into evidence the written lease signed by Mr. Katzenberg in its own case.

Nevertheless, respondent, relying on *Longmier v. Kaufman*, 663 S.W.2d 385 (Mo.App.1983) contends that no written lease was entered into by the parties, and therefore § 432.050, which makes any unwritten tenancy created between the parties one of tenancy at will, controls. Furthermore, respondent claims that even though it offered evidence of its own regarding the terms of the lease and did not object to Katzenlenberg's oral testimony concerning the terms of the lease, it may nevertheless assert the statute of frauds as a complete bar to enforcement of the lease and may effectively repudiate any obligation under it. *Longmier*, supra p. 389. See also: *Brooks v. Cooksey*, 427 S.W.2d 498, 504[1] (Mo.1968); *Jones v. Linder*, 247 S.W.2d 817, 820[4] (Mo.1952); *Jones v. Anderson*, 618 S.W.2d 252, 258 (Mo.App.1981).

We agree with respondent and hold that it did not waive the Statute of Frauds, § 432.050.

We believe the evidence clearly establishes that no written lease was "signed by the parties." The uncontradicted evidence was that Mr. Cohen, President of respondent, affixed his signature to the form lease tendered him by appellant conditionally, subject to review by respondent's counsel. We are concerned here with a commercial lease which was a "form lease" and we believe the evidence is clear that it did not contain the entire agreement between the parties. Nevertheless, in view of the undisputed evidence that no written lease was signed by the parties, the agreement, if any, could amount, by operation of law, to no more than a tenancy at will; § 432.050, *Longmier v. Kaufman*, supra, p. 389[1].

■ Instruction No. 10 submitted to the jury the question whether "plaintiff and defendant entered into an agreement whereby plaintiff agreed to rent warehouse space from defendant .... for a period of ten years, ..." This was error because not supported by the evidence, and requires that we affirm the trial court's order grant-

2. All statutory references are to RSMo 1978.

ing respondent a new trial on these grounds.

■ With respect to Instruction No. 12–a not in MAI instruction, patterned after MAI 23.05—Fraudulent Misrepresentations, we also hold that the trial court did not err in granting a new trial on the grounds stated.

Instruction No. 12 reads:

"Your verdict must be for defendant on his claim if you believe:

First, plaintiff represented to defendant that it would rent warehouse space from defendant at 2047 and 2061 Hitzert Court for a period of ten years at $4,080 per month for the first year, and defendant agreed to provide the warehouse space to to plaintiff, and

Second, in reasonable reliance on that representation defendant refused to rent the premises to another potential tenant, and

Third, plaintiff's representation to defendant was false, and

Fourth, plaintiff's representation was made with the intention of inducing defendant to make the premises available to plaintiff, and

Fifth, defendant was unaware that plaintiff's representation was false, and

Sixth, defendant was damaged thereby."

Appellant concedes that its counterclaim stated a cause of action in promissory estoppel. This was his position in the trial court and is still his position on appeal. In granting respondent a new trial, the trial court found that Instruction No. 12 was erroneous because it directed a verdict based upon a theory of fraud which was not supported by the evidence. We agree with the trial court.

■ There is no MAI Instruction on promissory estoppel. In these circumstances the instruction shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts. Rule 70.02(e). The ultimate test of a not-in-MAI instruction is whether it follows the substantial law and can be readily understood. *Kirkwood Medical Sup. Co. v. Ann Patterson Ent. Inc.*, 511 S.W.2d 433, 435, [3–5] (Mo. App.1974). The proper function of a not-in-MAI verdict director is to submit the factual questions which the jury must resolve. *Parker v. Stern Bros. & Co.*, 499 S.W.2d 397, 406, [2] (Mo.1973). The verdict director is limited by the petition and it is error to authorize recovery on an unpleaded ground. *Huter v. Birk*, 439 S.W.2d 741, 745, [8] (Mo.1969).

■ The elements of promissory estoppel are a (1) promise which the promisor should reasonably expect to induce action or forebearance on the part of the promisee or a third person, and (2) which does induce such action or forebearance, and is (3) held binding because injustice can be avoided only by enforcement of the promise. Restatement of Contracts 2d, § 90, subsection 1; *Feinberg v. Pfeiffer Company*, 322 S.W.2d 163, 167 (Mo.App.1959). Fraud is not an element of promissory estoppel, nor was it pleaded by appellant as an element of its claim. The evidence did not support a submission of fraud.

■ As distinguished from fraud, the doctrine of promissory estoppel is not concerned with good faith or bad faith of the promisor in making the promise allegedly relied on; that is irrelevant to the issue of whether an enforceable promise was in fact made. *Burst v. Adolph Coors Co.*, 503 F.Supp. 19, 22[2] (D.C.E.D.Mo.E.D.1980).

For these reasons we conclude the trial court did not err in granting respondent's Motion for New Trial on these grounds.

■ Respondent contends that the new trial should include a retrial of both its claim and appellant's counterclaim because the order sustaining its Motion for New Trial states: "Plaintiffs [sic] Motion for New Trial is granted on all issues ..." Appellant disputes this contention and takes the position that the new trial is limited to its counterclaim. We agree with appellant because the grounds for granting a new trial were on issues raised in respondent's Alternative Motion for New Trial

and directed at appellant's instructions submitting its Two Count Counterclaim, not on whether there was error in the jury's verdict for appellant on respondent's claim.

While the order of the trial court may appear to be ambiguous, it is clear that a trial court may not grant relief which was not requested in respondent's alternative motion for new trial. Respondent made no request for a new trial by reason of any errors which affected the jury verdict on its claim. All errors alleged were directed at the verdict on the counterclaim.

Judgment affirmed.

STEWART and SNYDER JJ., concur.