**SOUTHERN MISSOURI BANK,**
**Plaintiff-Respondent,**

v.

**Neil FOGLE, Defendant-Appellant.**

**No. 14998.**

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 14, 1987.

Ronald D. White, Robinson, Turley, Turley & White, Rolla, Joseph W. Rigler, Springfield, for defendant-appellant.

Thomas Strong, Steve Garner, Strong & Wooddell, P.C., Springfield, for plaintiff-respondent.

HOLSTEIN, Judge.

Southern Missouri Bank (the Bank) filed a three-count petition in replevin seeking possession of personal property and money damages resulting from Neil Fogle's default on three separate notes, each of which was secured. Fogle filed a counterclaim seeking both actual and punitive damages for "wrongful replevin" of defendant's property. The jury returned a verdict against the bank on each of its three claims and in favor of Fogle on his counterclaim, assessing actual damages in the sum of $80,000 and punitive damages in the sum of $65,000.

The trial court sustained the bank's motion for new trial on all issues on the basis that it had erroneously instructed the jury regarding compensatory damages on Fogle's counterclaim. From the order granting a new trial, Fogle appeals.

Fogle raises two points on appeal: (1) the trial court violated Rule 78.03 [1] by failing to set forth the reasons the instruction was in error, and (2) the granting of a motion for new trial on all issues was an abuse of the trial court's discretion, because error in

**1.** All references to rules are to Missouri Rules of Court, V.A.M.R.

the compensatory damages instruction under the counterclaim did not justify a granting of a new trial on all issues.

The pleadings and evidence indicate Fogle executed three separate notes payable to the bank. The first, dated January 6, 1982, was in the principal sum of $15,000 and secured by a security agreement of the same date granting a security interest in a 1964 Piper Twin Comanche airplane. Fogle had executed a second note dated April 5, 1982, in the principal sum of $6,000 which was secured by a security agreement of the same date covering all inventory, furniture and fixtures of the "Pit Stop" liquor store. The third note was in the principal sum of $5,025 dated May 16, 1983, and was secured by a security agreement on a 1970 Chevrolet pickup truck. Each of the three notes had been in default for more than ninety days by August 14, 1984, when the petition in replevin was filed.

On August 23, 1984, plaintiff filed its affidavit in replevin which contained the allegations essential to obtain immediate possession of the secured property. An ex parte order of delivery and replevin was issued. Pursuant to that order, the sheriff seized the secured property, delivering it to plaintiff. As provided in Rule 99.09, Fogle requested and received a hearing to determine the bank's right to possession pending trial on the merits.

At the hearing held September 12, 1984, Fogle did not deny the validity of the notes or the security agreements, nor did he claim the notes were not in default according to their terms. Fogle denied any demand was made for payment of the notes. He contended the bank was not entitled to possession of the property on the basis of a conversation he had with bank president Robert Phillips on Monday or Tuesday of the week of August 20, 1984. In that conversation, Fogle informed Phillips he intended to take the airplane to Memphis to sell. The evidence regarding the conversation with Phillips was as follows:

Q. Did Mr. Phillips tell you that you had no problem, nothing to worry about, if you would come in the following Monday?

A. The conversation, as I remember it, was I told him that I was going to be out of town. I would be back in there Friday evening and that I would come over Saturday morning. And he said that he would not be in his office on Saturday morning.

I said, "Will you be in your office on Monday morning?" He said, "I'll be in my office on Monday morning." I said, "Well, we should be able to clear this thing up, and I should, you know, be able to substantially pay off my indebtedness to the bank."

And I believe his exact words were, "That's what we're looking for."

No further evidence was offered at that hearing to indicate Phillips had made any commitment not to take action to enforce the notes. On this evidence, the trial court determined the bank was entitled to possession of the secured property and entered its order in conformity with that finding.

In his answer, Fogle admitted execution and delivery of the notes and security agreements. By way of affirmative defense, he alleged he had promised to pay off the notes on Monday, August 27, 1984, and that Phillips had told him that would be acceptable and no action would be taken prior to that day. He further alleged that he had detrimentally relied on Phillips' statements. In addition to the affirmative defense, Fogle filed a counterclaim containing essentially the same allegations, seeking actual and punitive damages.

At trial, Fogle again admitted all three notes were delinquent. He modified his prior testimony by admitting he had received a letter on about May 16, 1984, making a demand for payment of the notes. Fogle also modified the account of his telephone conversation with Phillips. In response to questions by his attorney, Fogle testified as follows:

Q. Did you tell Mr. Phillips you were in a position, then, to come in and satisfy these notes?

A. I did, yes.

Q. Or very nearly in position?

A. Yes, I did.

Q. Did you talk about what day you would be in to pay the notes?

A. I told him that I had—was getting ready to fly a three-day trip and that I would be back late Friday. And he—or Friday afternoon. And he indicated that he would not be in the bank. And I said, "Well, how about Saturday morning?"

He said, "Well, I won't be in the bank Saturday morning, either." And I said, "Well, how about Monday?"

Q. What did he say?

A. He said, "Yes, I'll be back Monday." I think he told me he was going to Kansas City.

Q. Did you—Did you ask him whether or not he would refrain or keep from doing anything on the notes to allow you to come in Monday?

A. Well, the conversation was such that I wanted some assurance from him that nothing would take place until I had a chance to come in and pay off the money.

Q. What did you ask him?

A. I asked him if he would—Once it was determined that I was not going to be in town and he was not going to be in town, that the first time that both of us would be in town was Monday, I asked him if—if they would hold off until Monday.

Q. What did he say?

A. He replied in the affirmative.

At the close of plaintiff's case and at the close of all the evidence, plaintiff moved for a directed verdict. These motions were overruled.

The jury returned a verdict against the bank on each of the three counts in replevin and a verdict in favor of defendant on his counterclaim awarding him actual damages in the sum of $80,000 and punitive damages in the sum of $65,000.

The bank filed a motion for judgment in accordance with the prior motion for a directed verdict on all issues or alternatively, a new trial on all issues. That motion was filed September 10, 1986. The trial court, in response to the bank's motion, entered the following order:

Plaintiff's motions filed herein on 9–10–86 are ruled upon as follows: Plaintiff's motion for judgment in accordance with prior motion for directed verdict made at close of all evidence is overruled; plaintiff's motion for new trial is sustained and as ground for granting new trial on all issues, the court find [sic] it erred in giving damage instruction No. 21.

Instruction No. 21 is the compensatory damages instruction on Fogle's counterclaim.

Fogle appeals from the order granting a new trial. The bank attempted to cross-appeal from the order overruling it's motion for judgment. We dismissed the cross-appeal because the bank is not an aggrieved party within the meaning of the statute, § 512.020, RSMo 1986. Where the trial court has sustained a party's motion for new trial, that party is not aggrieved by reason of the trial court's failure to sustain its alternative motion for judgment. *Ward v. Lemke*, 602 S.W.2d 33, 35 (Mo.App.1980).

*Respondent's Burden of Supporting the Trial Court's Action.*

Fogle's appeal is premised on the trial court's failure to adequately specify the ground or grounds on which the new trial was granted. Rule 78.03. We agree that the ground for granting the new trial is inadequately articulated by the trial court. A mere declaration that an instruction was erroneous is insufficient to comply with the rule. *Chappell v. City of Springfield*, 423 S.W.2d 810, 811 (Mo.1968). When the trial court fails to properly specify the grounds upon which a new trial was granted, it is presumed that the trial court erroneously granted the new trial and the burden of supporting the trial court's action shifts to the respondent. Rule 84.-05(b). Provision is made in Rule 84.05(b) for the appellant to serve a statement requesting that respondent prepare the original brief. Such statement served on a respondent prior to the filing of the record on appeal places the respondent in the position of an appellant in other cases. Here, the appellant, Fogle, failed to avail himself of the provisions of the rule. However, the bank makes no complaint of the omission and in its brief, accepts the burden of sup-

porting the trial court's action in granting a new trial.

■ The respondent's burden of supporting the correctness of the trial court's grant of new trial is met if the motion for new trial raises some ground supporting the action of the trial court. *Artstein v. Pallo,* 388 S.W.2d 877, 880 (Mo. banc 1965). The respondent's brief must specify the same points of error raised in the motion for new trial. *Reynolds v. Briarwood Development Co.,* 662 S.W.2d 905, 906 (Mo. App.1983). Here the motion for new trial extensively enumerated allegations of error. The bank's brief presents ten of these points for our consideration. If the grant of a new trial was required as a result of any one or more of the points raised, we must affirm. Two of the points raised by the bank in its motion for new trial and in its brief demonstrate the propriety of the trial court's action in granting a new trial. We need not consider the others.

*Error in Giving Verdict–Directing Instruction on Counterclaim.*

Fogle's counterclaim is apparently based on a conversion theory, although he alternatively refers to it as an action for "wrongful replevin." Our research reveals no generic cause of action with that identity. Conversion is the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights. *Maples v. United Savings & Loan Association,* 686 S.W.2d 525, 527 (Mo.App.1985).

Fogle admitted the delinquency of the note and the execution and delivery of the security agreement. Under the terms of the security agreement, Fogle authorized the bank to assume certain ownership rights when the notes were not paid when due. Specifically, the security agreements gave the bank the right to immediate possession and sale of the secured property if the notes were in default. Thus, Fogle's right to retention of the property was contingent upon whether the bank, through its agent Phillips, had given Fogle an enforceable promise to extend the time for payment of the notes and not to exercise its right to possession.

■ A binding agreement to extend time for payment of a matured debt must be supported by new and independent consideration. *Dobbins v. City Bond & Mortgage Co.,* 343 Mo. 1001, 124 S.W.2d 1111, 1116 (1938). Fogle, in recognition of this principle, attempts to avoid the absence of consideration by claiming he was entitled to rely on the promise under the doctrine of promissory estoppel. The doctrine of promissory estoppel provides that when a promise is made which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance, the promise is binding if injustice can be avoided only by performance of the promise. Restatement (Second) of Contracts § 90(1); *Footwear Unlimited, Inc. v. Katzenberg,* 683 S.W.2d 291, 296 (Mo.App.1984).

Fogle submitted a not-in-MAI verdict-directing instruction (Instruction No. 20) which stated:

Your verdict must be for defendant if you find and believe:

First, plaintiff, by its president Bob Phillips, promised not to take any action for collection of the notes or possession of the security until August 27, 1984, and

Second, defendant relied on that promise and

Third, as a direct result of defendant's reliance he was damaged.

■ The ultimate test of a jury instruction not found in MAI is whether it follows the substantive law and can be readily understood. *Bayne v. Jenkins,* 593 S.W.2d 519, 530 (Mo. banc 1980); *Streeter v. Hundley,* 580 S.W.2d 283, 287 (Mo. banc 1979). The proper function of a not-in-MAI verdict director is to submit all contested factual issues necessary to support the legal proposition on which the right to the verdict is based. *Fitzpatrick v. Ford,* 372 S.W.2d 844, 849 (Mo.1963); *Footwear Unlimited v. Katzenberg,* supra, at 296.

■ As clearly appears, the verdict-directing instruction on Fogle's counterclaim

failed to hypothesize (1) any action or forbearance on the part of Fogle, (2) that Phillips, on behalf of the bank, should have reasonably expected to induce the action or forbearance by Fogle, and (3) that Fogle was induced by Phillips' promise to such action or forbearance. The instruction did not hypothesize the facts essential to support Fogle's claim that he had the right to retain possession of the secured property. Fogle's right to possession is essential to any recovery in an action for conversion. *Centerre Bank National Association v. Missouri Farmers Association, Inc.*, 716 S.W.2d 336, 341 (Mo.App.1986). A verdict-directing instruction is prejudicially erroneous if it fails to require a finding of all essential fact issues necessary to establish the legal proposition on which the right to the verdict is based. See *Evans v. Allen Auto Rental*, 555 S.W.2d 325, 326–327 (Mo. banc 1977).

*Error in Giving Damages Instruction on Defendant's Counterclaim.*

 The bank has also preserved in its motion for new trial, and briefed on appeal, the propriety of Fogle's compensatory damages instruction, MAI 3rd 4.01, given to the jury as instruction No. 21. That instruction read as follows:

> If you find in favor of defendant on defendant's claim for wrongful replevin, then you must award defendants [sic] such sum as you believe will fairly and justly compensate defendant for any damages you believe he sustained as a direct result of the occurance [sic] mentioned in the evidence.

The bank correctly points out that MAI 4.01 does not apply where there is no personal injury and it is error to give MAI 4.01 where plaintiff's only claim is for damages to property. *Breece v. Jett*, 556 S.W.2d 696, 710 (Mo.App.1977); *State ex rel. State Highway Commission v. Beaty*, 505 S.W.2d 147, 154 (Mo.App.1974). The proper measure of damages in a conversion case is the reasonable market value of the property at the time of the conversion. *Lacks v. R. Rowland & Co., Inc.*, 718 S.W.2d 513, 520 (Mo.App.1986). In addition, to allow full indemnity, interest is allowed in conversion cases on the value of the converted property from the date of its conversion. *Independence Flying Service, Inc. v. Ailshire*, 409 S.W.2d 628, 632 (Mo. 1966); § 537.520, RSMo 1986; § 408.020, RSMo 1986.

The highest figure the evidence would support as the fair market value of the repossessed personal property is $56,000. This figure makes no allowance for any setoff of the amounts which Fogle admitted were still due on the three notes. If interest at the lawful rate were added to $56,000, the "full indemnity" would fall far short of the $80,000 awarded by the jury.

 Fogle presented evidence at trial of two year's lost profits from the liquor store. He argues that the difference between the $56,000 figure and $80,000 is represented by those lost profits. By his argument that he is entitled to recover the earnings or profits he lost in the operation of the Pit Stop Liquor Store, he misconceives the nature of the consequential damages to which he might be entitled under the law. While there may be recovery of lost profits shown to be the natural and probable consequence of an act or omission, it must be shown by reasonable certainty. There is no such recovery when there is uncertainty or speculation as to whether the loss of profits was the result of the wrong, and whether any such profits would have derived at all. *Eastman Kodak Stores, Inc. v. Summers*, 377 S.W.2d 476, 481 (Mo.App.1964). Since a claimant is required to take reasonable steps to minimize his damages, consequential damages are ordinarily limited, in a conversion case, to the period it would take a reasonable person to replace the converted items. See *NIKA Corporation v. City of Kansas City, Missouri*, 582 F.Supp. 343, 366 (W.D. Mo.1983). If we were to adopt Fogle's position, we would be required to speculate that the bank, by converting the assets of the liquor store, not only deprived him of the inventory, but also prevented him from replacing the inventory or deprived him of his customers who would have purchased the liquor. There was no such evidence. Since 4.01 permitted such speculation by

the jury and since the jury apparently engaged in such speculation, the giving of the instruction was prejudicial.

*Sufficiency of the Bank's Objections to the Instructions.*

■ Fogle, in his reply brief, does not argue that either of the above instructions is proper. The reply brief claims that the bank failed to make a precise objection or offer a correct instruction as required by *Fowler v. Park Corporation,* 673 S.W.2d 749 (Mo. banc 1984), to preserve the instructional error. *Fowler* states that one who is deliberately silent in the face of instructional error related to a deviation from MAI, runs the risk that the court will find the error not prejudicial so as to require reversal. *Id.* at 757.

At the instructions conference, a specific objection was made to the verdict-directing instruction on the counterclaim because it failed to hypothesize that Phillips' promise was supported by either consideration or facts which would constitute reliance. The damages instruction was objected to because it failed to hypothesize the elements of damages in MAI 4.02. Inasmuch as these objections were sufficient to inform Fogle of the basic flaws in his instructions, the bank cannot be convicted of "sandbagging," as had occurred in *Fowler.* We find nothing in *Fowler* which requires a party making a proper objection to a faulty instruction to offer a correct instruction.

*Grant of New Trial on the Plaintiff's Claim.*

■ Fogle tacitly admits that if a new trial is properly granted, the court has discretion to grant a new trial on all or part of the issues and may only be reversed for an abuse of such discretion. Rule 78.01; *Krygiel v. Don Darr Pontiac, Inc.,* 668 S.W.2d 267, 268 (Mo.App.1984). He argues that inasmuch as the grant of the new trial was based only on the erroneous compensatory damage instruction on the counterclaim, the trial court abused its discretion in granting a new trial on all issues. This argument assumes the only error was in the giving of a flawed damage instruction. The assumption is wrong. As we have previously noted, Fogle's defenses to plaintiff's replevin claims, as well as his counterclaim for conversion, are based largely on his alleged right to possession arising under the theory of promissory estoppel. He failed to submit a proper instruction on that issue, as well as failing to submit a proper instruction on the issue of compensatory damages.

The issues relating to the right of possession of the property in question and the damages involved are inextricably blended and interwoven in the plaintiff's replevin action and defendant's counterclaim for conversion. Under such circumstances, we find no abuse of discretion in granting a new trial on all issues. See *Schoor v. Wilson,* 731 S.W.2d 308, 314 (Mo.App. 1987); *Phillips v. Lively,* 708 S.W.2d 369, 373 (Mo.App.1986); *Thomas v. Durham Motors, Inc.,* 389 S.W.2d 412, 416 (Mo.App. 1965).

The judgment is affirmed.

CROW, C.J., and GREENE, P.J., concur.